[Civ. No. 46466. Second Dist., Div. Five. Feb. 27, 1976.]

WILLIAM H. MEYER et al., Plaintiffs and Appellants, v.
HOWARD BENKO et al., Defendants and Respondents.

**COUNSEL**

Kasem & Rech and George A. Kasem for Plaintiffs and Appellants.

Ingram & Baker, Richard J. Griffiths, Bollen, Suttner & Gekas and Ernest J. Gekas for Defendants and Respondents.

**OPINION**

**STEPHENS, J.**—This is an action for specific performance of a contract of sale of real property, or in the alternative, damages. Plaintiffs William

and Deborah Meyer, purchasers, appeal from a judgment that no contract existed or was created between them and the defendants, Howard and Irene Benko, sellers.

*Facts*

On December 28, 1972, plaintiffs and defendants executed a document entitled "DEPOSIT RECEIPT and AGREEMENT OF SALE (hereinafter, Deposit Receipt). Under its terms, the Deposit Receipt required plaintiffs to deposit $250 of a total of $23,500 purchase price for a residence owned by defendants and, in pertinent part, further specified:

"Buyer to obtain and qualify for a new (____VA 20½ yr.____ FHA X FHA Vet 30 yr.) loan in the amount of $ 22,650 at the prevailing (____VA X FHA) interest rate at close of escrow (plus ½% to FHA Mutual mortgage insurance). Buyer to pay 1 pt. loan origination fee and ½% VA funding fee, if applicable, and those costs required by (____VA X FHA) lender including an impound account for taxes and hazard insurance. Payments to be approximately $214.00 per month including principle [*sic*] interest and impounds for taxes and hazard insurance. Seller to pay no more than 4.5 loan discount points for new loan. ( X Seller____ Buyer) to pay for (____VA X FHA) appraisal and *seller to do any necessary work at his expense. . . .*" (Italics added.)

The defendants signed this document on the lines prefaced by the word "Seller," immediately below a statement acknowledging that the sellers "have read, understood, approved and received [a] copy of this agreement. . . ." Plaintiffs' signatures appear on the lines labeled "Buyer," immediately below the following statement:

We, the undersigned, agree to purchase the above described property for the price and terms outlined above. We have read and understood this agreement and acknowledge receipt of a copy of this *contract.* (Italics added.)

The parties also executed escrow instructions, the substance of which essentially duplicates the Deposit Receipt.

Following the execution of these documents, the plaintiffs procured a loan commitment from Colonial Associates Incorporated in the amount of $22,650, guaranteed by the Federal Housing Authority, payable over a 30-year period at an interest rate of 7½ percent per annum. However, as

a condition to guaranteeing the loan, the FHA required that a new roof be installed on the residence. Both the plaintiffs and the defendants refused to pay the $515 cost of a new roof. As a result, the loan commitment lapsed and the defendants never conveyed possession or title to the residence.

Plaintiffs instituted this action, alleging that the aforementioned Deposit Receipt constituted an enforceable contract, and that despite the fact that the plaintiffs had performed all conditions precedent to conveyance, the defendants refused to convey the subject property. After a trial without a jury, the court concluded that no contract existed between the parties. This conclusion was based upon findings that the Deposit Receipt merely constituted an offer subject to various unsatisfied contingencies.

### Discussion

In considering the merits of this appeal, we heed certain guidelines:

■ "The interpretation of a written instrument . . . is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purpose of the instrument may be given effect. [Citations.] Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect." (*Parsons* v. *Bristol Dev. Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]) ■ In addition, it is "solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, 'An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation].' (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].)" (*Parsons* v. *Bristol Dev. Co., supra,* 62 Cal.2d 861, 865). In the case at bar, we have determined that there is no conflict in the relevant evidence. Therefore, we are not bound by the trial court's construction of the Deposit Receipt.

■ Every contract requires the mutual assent or consent of the parties. (Civ. Code, §§ 1550, 1565.) The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable

person to believe. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 88, pp. 92-93.) Accordingly, the primary focus in determining the existence of mutual consent is upon the acts of the parties involved. ██ In the case at bar, this focus is directed toward the Deposit Receipt and related documents, and the actions of the parties during the period of time encompassing the execution of these documents.[1]

██ The utilization of the objective test of mutual consent demonstrates that the Deposit Receipt is in fact a contract. The fact that this document was signed by *both* parties indicates that the parties entered into an enforceable agreement. "Ordinarily, one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms . . . ." (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 89, p. 93.) Although the parties introduced conflicting testimony as to whether or not the terms of the Deposit Receipt were explained to the defendants before they signed that document, this evidence was not sufficient to establish a lack of mutual consent. "The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its explicit provisions are contrary to his intentions or understanding." (*Larsen* v. *Johannes,* 7 Cal.App.3d 491, 501 [86 Cal.Rptr. 744].) In addition, the material factors common to a contract for the sale of real property are contained within the terms of the Deposit Receipt. The Deposit Receipt named the sellers, named the buyers, identified the property being sold, and specified the price for which that property was being sold. Further, it detailed the method of financing the transaction, as well as providing an allocation of various incidental costs and duties. The presence of these material factors upon the face of the document raises two inferences, both of which indicate the existence of mutual consent. First, these factors indicate that the parties had proceeded beyond the stage of mere preliminary negotiations and into the stage of actual contract formation. Moreover, the presence of this material in the document gave notice to the subscribing parties, notably the defendants, that they were entering into a binding contract by subscribing their signatures upon that document. The evidence introduced by the defendants relating to their

[1]On this appeal defendants contend that plaintiffs' failure to introduce the Deposit Receipt into evidence at the trial estops plaintiffs from arguing that that document is a contract. However, in presenting this argument, defendants fail to recognize the effect of their answer to plaintiffs' amended complaint. In admitting the joint execution of the Deposit Receipt, the answer made it unnecessary for plaintiffs to introduce that document into evidence.

lack of knowledge about the implications of the terms contained in the Deposit Receipt fails to rebut these inferences. Finally, the execution of the escrow instructions, whose terms substantially mirrored those found in the Deposit Receipt, further demonstrates the mutual consent of the parties to those terms as a binding commitment.

■ In toto, the various facts discussed above lead to the inescapable conclusion that, based upon an objective test of contract formation, the parties mutually assented to the formation of a contract on the terms and conditions set forth in the Deposit Receipt. Accordingly, pursuant to the term obligating the seller "to pay for . . . FHA appraisal and . . . to do any necessary work at his expense," the defendants were bound to pay for the new roof.

■ We take note of the fact that our resolution of this case is consistent with the general view that such deposit receipts constitute binding and enforceable contracts. (*Mattei* v. *Hopper,* 51 Cal.2d 119, 122 [330 P.2d 625]; Miller & Starr, 1 Current Law of Cal. Real Estate (Part 1, revised 1975) § 2.24, p. 234 fn. 11.)

Defendants contend that a material mistake of fact—namely, the defendants' belief that they would not be obligated to install a new roof upon the residence—prevented contract formation. ■ A unilateral[2] mistake of fact may be the basis of relief. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 295, p. 248.) However, such a unilateral mistake may not invalidate a contract without a showing that the other party to the contract was aware of the mistaken belief and unfairly utilized that mistaken belief in a manner enabling him to take advantage of the other party. (*Larsen* v. *Johannes, supra,* 7 Cal.App.3d 491, 503.) Defendants have failed to present any evidence in support of either requirement.

---

[2]Defendants fail to characterize the alleged mistake of fact as either unilateral or mutual. However, their reliance upon the following testimony indicates that they contend that the mistake was mutual:

"Defense Counsel: 'Is it your understanding that you were to receive as a part of that purchase a roof, a new roof provided for and paid for by the Benkos?'

"Plaintiff William Meyer: No."

This testimony fails to establish that plaintiffs entered into the contract with the mistaken belief that defendants would not have to pay for a new roof if the FHA imposed such a condition to its guaranteeing of the loan. Rather, this testimony merely establishes that plaintiffs did not believe that defendants were obligated to provide for and pay for a new roof regardless of what the FHA might require.

Having established that the Deposit Receipt constitutes a valid enforceable contract, we proceed to a determination of the proper remedy in this case.

The trial court found that there was inadequate consideration to justify specific performance. ■ "The proper time for testing the adequacy of consideration is as of the formation of the contract." (*Henderson* v. *Fisher,* 236 Cal.App.2d 468, 474 [46 Cal.Rptr. 173]) Various items of testimonial evidence were presented regarding the market value of the residence at the time the Deposit Receipt was executed. The listing real estate sales agent testified that she believed the value of the property to be "down a little" from the earlier listing price of $24,950. On the other hand, defendant Irene Benko testified that she believed that the residence was then worth $30,000 *to her,* although conceding that she was unaware of its market value. Defendant Howard Benko testified that he believed the residence had a market value of $29,000 or $30,000 at that time. However, he also testified that he signed the Deposit Receipt at the sales price of $23,500 in order to sell the residence more quickly. "In determining whether consideration was fair and adequate, all circumstances surrounding the transfer of the property as they existed at that time, must be considered." (*Lundgren* v. *Lundgren,* 245 Cal.App.2d 582, 589 [54 Cal.Rptr. 30].) "A consideration, to be adequate, need not amount to the full value of the property." (*Foley* v. *Cowan,* 80 Cal.App.2d 70, 76 [181 P.2d 410].) The test "is not whether the [vendor] received the highest price obtainable for his property, but whether the price he received is fair and reasonable under the circumstances." (*Henderson* v. *Fisher, supra,* 236 Cal.App.2d 468, 474.) Defendants' desire to quickly consummate a sale explains the difference between the sale price agreed to and the alleged full value of the property. (*Williams* v. *Rush,* 134 Cal.App. 554, 560 [25 P.2d 888].) Therefore, the trial court's finding of inadequate consideration was clearly erroneous and unsupported by the evidence adduced at the trial.

Because the trial court determined that there was no contract, it failed to make any findings as to various items of damages also alleged by the plaintiffs. The case must be reversed. Since one item of damages appears to present an issue of first impression, we have formulated some guidelines for the trial court. By this statement we do not exclude other proper items of damages.

Plaintiffs seek an award compensating them for loss of use of the property, measured by the fair rental value of the property from the time when the conveyance should have occurred under the terms of the contract. In *Ellis* v. *Mihelis* (60 Cal.2d 206 [32 Cal.Rptr. 415, 384 P.2d 7]), the Supreme Court observed that "A party to a contract for the purchase or exchange of land who is entitled to a decree of specific performance is also ordinarily entitled to a judgment for the rents and profits from the time he was entitled to a conveyance." (*Id.,* at p. 219.) While *Ellis* differs from the case at bar in that *Ellis* involved a conveyance of income-producing property, the basis of the *Ellis* conclusion logically embraces a case involving a conveyance of nonincome producing, residential property. ■ "The guiding principle with respect to the calculation of the damages incident to the decree of specific performance . . . is to relate the performance back to the date set in the contract. Timely performance of the contract would result in the purchaser's receiving the rents and profits of the land . . . ." (*Id.,* at p. 220.) In the immediate case, the plaintiffs have been deprived of the use of the residential property which is the subject of the contract of sale. The value of this loss may be properly measured by the fair rental value of the subject property. ■ In the case at bar, the only evidence introduced concerning the fair rental value of this property was the testimony of the plaintiff, William Meyer, who testified that he believed the rental value was $300 a month.[3] This valuation apparently related to the rental value of the property at the time of trial. Because rental values may fluctuate tremendously over relatively short periods of time, the rental value of this property should be more accurately assessed over the entire period of time. Moreover, on retrial, the court must determine the specific time when the conveyance should have occurred under the terms of the contract, and measure the rental value from that date. Finally, defendants are entitled to an offset against the total rental value figure in an amount equal to the interest upon the total purchase price from the date on which the conveyance should have occurred. (*Ellis* v. *Mihelis, supra,* 60 Cal.2d 206, 220.) While plaintiffs have been deprived of the use of the subject property, defendants have been deprived of the use of the

---

[3]This opinion evidence was admitted on the basis of plaintiffs' contention that the witness was an "equitable owner" of the realty in question, and thereby competent to testify as to its value. (Cf. *Chamberlain* v. *Chamberlain,* 114 Cal.App. 591, 594 [300 P. 100].) We have been unable to discover any authority delineating the relevant parameters of this long-established exception to the general rule prohibiting the admission of opinion evidence. Accordingly, we have concluded that this evidence was properly admitted, determining that the witness' familiarity with such values goes to the weight rather than the admissibility of the testimony. (Cf. *City of Fresno* v. *Hedstrom,* 103 Cal.App.2d 453, 461 [229 P.2d 809].)

purchase funds. The trial court must also determine the amount of this offset to which defendants are entitled.

The judgment is reversed.

Kaus, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied March 22, 1976, and respondents' petition for a hearing by the Supreme Court was denied April 22, 1976.