15 F.3d 1084
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Lucien E. DIERICKX, Plaintiff-Appellant
v.
ALLSTATE INS. CO. Defendant-Appellee.
 No. 92-55723.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1993.
Decided Jan. 19, 1994.
 
 1
 Before: FLETCHER and D.W. NELSON, Circuit Judges, and WILL,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Lucien E. Dierickx appeals the district court judgment compelling enforcement of a settlement agreement entered into between Dierickx and Allstate, and denying Dierickx's motion for leave to amend to name additional defendants. Allstate seeks sanctions against Dierickx for bringing a frivolous appeal and for misrepresenting the factual record in materials submitted to this court. We affirm the district court's decision enforcing the settlement, but find sanctions against Dierickx inappropriate.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 4
 This action arose out of Allstate's alleged failure to fulfill its obligations under the terms of a landlord's policy covering rental property owned by Dierickx. Dierickx had purchased the property, 2230 Glen Street in Riverside, CA (the "Glen Street property") at a foreclosure sale in 1985. The family against whom the property was foreclosed, the Cordovas, remained on the premises until 1990 as tenants of Dierickx. Dierickx first obtained an Allstate policy for the property in January 1990. In March 1990, Dierickx became involved in a title dispute with the Cordovas. Dierickx defended himself with the aid of his own attorney, ultimately prevailing in the suit in December 1990. When the Cordova family moved out in August 1990, they allegedly left the property with considerable damage, creating additional expenses for Dierickx.
 
 
 5
 Dierickx sought reimbursement from Allstate for his expenses, but Allstate refused payment, stating that Dierickx's landlord policy did not provide the appropriate coverage. Dierickx then filed suit against Allstate in state court on August 14, 1991, seeking damages for breach of contract, fraud, tortious breach of the covenant of good faith and fair dealing, and declaratory relief. Allstate timely removed the action on grounds of diversity to federal court in the Central District of California.
 
 
 6
 At the early meeting of counsel, held on November 7, 1991, lawyers for the two parties began to discuss settlement. Dierickx's attorney at the time, David Ackerman, suggested a settlement of approximately $10,000. On November 18, Ackerman informed Allstate that he was no longer authorized to conduct settlement negotiations and that all future negotiations should be conducted with Dierickx in person. On November 19, Dierickx told Allstate's counsel that he would not settle for $10,000 but would be willing to settle for $42,000. The parties subsequently disputed whether the $42,000 figure was to be in exchange for a release of all claims against Allstate or only for release of the contract portion of his claims.
 
 
 7
 On November 26, Dierickx executed and served a substitution of attorney, substituting himself, in pro per, for Ackerman. On December 5, counsel for Allstate asked Dierickx to revive his November 19 offer, and Dierickx agreed on the condition that the dollar amount be increased to cover the fees of his new lawyer, Arthur Y. Baker, in the amount of $1,530. Dierickx did not state that Baker was representing him in negotiations or that Allstate should direct its settlement offers to Baker.[1] On December 10, Dierickx reached an agreement on the phone with counsel for Allstate. Later the same day, Allstate's counsel sent a letter by fax setting forth terms of a broad release of liability in exchange for $44,530. The terms included relief from liability for "all claims" raised in the pending suit, "all claims" arising from losses sustained at the Glen Street property, and "any claims" arising out of Dierickx's claim that Allstate should indemnify him for defending the 1990 action brought by the Cordovas. Supplemental Excerpt of Record (SER) at 1.
 
 
 8
 Later that afternoon, Dierickx consulted with Baker. A central topic of discussion was the $1,000 increase in the settlement offer--the settlement figure in Allstate's fax was $44,530 rather than the $43,530 agreed to over the phone. Both Dierickx and Baker concede that Baker at that time expressly advised Dierickx that the $1,000 might have represented new consideration "because they are going to dispose of everything, including bad faith," thus explicitly bringing to Dierickx's attention the broad scope of the release. Excerpt of Record (ER) at 8.
 
 
 9
 Immediately after he had discussed the matter with Baker, though apparently on his own initiative, Dierickx sent the following reply fax to Allstate:
 
 
 10
 This is to inform you that the Undersigned hereby accepts to settle as per terms as written and received in today's facsimile from your office. We now have a full agreement; I trust you will faithfully transcribe said terms in the necessary documents to carry this agreement to completion.
 
 
 11
 CONGRATULATIONS! You have singlehandedly saved a bundle for your client. I guess Allstate will never know how lucky it was to be represented by you. Wisdom is a precious gift and you got it. Again, congratulations and have a merry Christmas.
 
 
 12
 SER at 3. The following day, Allstate, apparently realizing that it had made a typographical error in its fax of December 10 (inadvertently agreeing to settle for $44,530 instead of $43,530), contacted Dierickx once more. Allstate counsel January M. Chaix spoke with Dierickx on the phone, and Allstate employee Jonathan M. Drucker sent a fax confirming Allstate's understanding that the figure should be reduced by $1,000. Dierickx subsequently informed Allstate that the December 11 fax sent by Drucker was a repudiation of the agreement. On December 13, when Allstate again contacted Dierickx, Dierickx directed Allstate to talk to Baker, who was then out of town. After Baker returned, he advised Allstate on December 18 that the settlement was void because no meeting of the minds had taken place--he argued that Dierickx had never intended to agree to a general release.
 
 
 13
 On December 30, 1991, roughly three weeks after the exchange of faxes, Baker served a substitution of attorney form on counsel for Allstate. The substitution, purportedly signed on December 6, replaced plaintiff with Baker as attorney of record. On January 3, in the course of his review of records that had been produced by Allstate, Baker discovered the existence of a second Allstate "homeowner's" policy covering the Glen Street property. Although this policy listed the Cordovas as insureds, Dierickx had been paying for it (from the time he purchased the property in 1985) out of an impound account, per his agreement with the mortgage company that was the first trust deed holder for the Glen Street property. Dierickx concedes that he was aware of this policy all along but contends that, prior to Baker's examination of the policy on January 3, he had assumed it merely covered the lender's interest. Neither party has discussed how this policy might have affected Dierickx's rights or how it would be affected by the settlement.
 
 
 14
 On February 25, 1992, Dierickx filed his motion to amend his complaint to add as defendants the Cordovas (as the insureds of the second policy), and the two Allstate agents in charge of the two policies. Two weeks later, Allstate filed its motion to compel enforcement of the settlement agreement. On April 13, a hearing was held in which the district court denied Dierickx's motion, the judge suggesting at one point that he saw it as a last minute ploy to undermine jurisdiction, and, at another, that it was simply too late to consider such a motion whatever its merits might be. The district court granted Allstate's motion to enforce the settlement agreement, stating "If that's not a done deal, I never saw one." ER at 20. Allstate then prepared a draft order, a copy of which it provided to Dierickx on April 17. The court order disposing of the action was signed by the district court on April 23 and entered on April 27. Dierickx timely filed his appeal, and Allstate subsequently moved for sanctions.
 
 
 15
 This appeal raises the following issues: 1) whether the district court erred in concluding that the parties reached a complete settlement agreement; 2) whether the district court abused its discretion in ordering enforcement of the settlement agreement, and in denying Dierickx's motion for leave to amend his complaint to name additional parties; 3) whether the district court erred in adopting the proposed order prepared by Allstate; and 4) whether sanctions against Dierickx and his counsel are appropriate under either Fed.R.App.P. 38 or 28 U.S.C. Sec. 1927.
 
 DISCUSSION
 
 16
 I. THE DISTRICT COURT DID NOT ERR IN CONCLUDING THAT THE PARTIES HAD REACHED A COMPLETE SETTLEMENT AGREEMENT
 
 A. Standard of Review
 
 17
 This court reviews for clear error the district court's finding that the parties reached agreement on settlement terms. See Ahern v. Central Pacific Freight Lines, 846 F.2d 47, 48 (9th Cir.1988) ("The district court's finding that [the objecting party] assented to the settlement and intended to be bound by it must be affirmed unless it is clearly erroneous."); see also Ah Moo v. A.G. Becker Paribas, Inc., 857 F.2d 615, 621 (9th Cir.1988) (findings relating to offer, acceptance and revocation are factual findings reviewed for clear error); Collins v. Thompson, 679 F.2d 168, 170 (9th Cir.1982) (same). The enforcement of settlement agreements, moreover, is favored in the law. Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir.1989).
 
 B. Analysis
 
 18
 This court relies on basic contract principles in interpreting a settlement agreement. Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir.1989) ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law."). Accordingly, this court must apply the contract law of the appropriate state, here California. Under California law, a legally enforceable contract requires mutuality of intent. Cal.Civ.Code Sec. 1565. Intent, however, is judged on an objective standard, see Meyer v. Benko, 127 Cal.Rptr. 846, 848 (Cal.Ct.App.1976), and, wherever possible, "the intention of the parties is to be ascertained from the writing alone," Cal.Civ.Code Sec. 1639. "The language of a contract is to govern its interpretation if the law is clear and explicit and does not involve an absurdity." Id., Sec. 1638. See also Pierce Co. Hotel Employees and Restaurant Employees Health Trust et al. v. Elks Lodge, 1450, 827 F.2d 1324, 1327 (9th Cir.1987) (where a contract is unambiguous, extrinsic evidence is not admissable to contradict its meaning).
 
 
 19
 Dierickx contends that he never intended to release Allstate from anything but his contract claims. Dierickx does not argue, however, that the terms set forth in Allstate's fax and accepted by Dierickx in his reply fax were ambiguous. Instead, he argues that there can have been no meeting of the minds because the two faxes were framed differently. He notes that while Allstate's fax was framed as a confirmation of the "agreement" already reached on the phone, Dierickx, in his reply fax, treated Allstate's fax as an offer, the terms of which he "accept[ed]." Dierickx's attempt to cast doubt on the existence of an agreement is unavailing. Whether Allstate's fax was a written confirmation of a pre-existing oral agreement or a materially new offer, Dierickx's unequivocal reply--"[T]he undersigned hereby accepts to settle as per terms as written and received in to-days' [sic] facsimile," SER at 1--sufficed to make the agreement complete, and supplanted any prior dealings on the matter. See, e.g., BMW of North America, Inc. v. New Motor Vehicle Bd. (Hal Watkins Chevrolet, Inc.), 209 Cal.Rptr. 50, 56 & n. 4 (Cal.Ct.App.1984) (noting that, under Cal.Civ.Code Sec. 1625, terms set forth in a writing supersede all prior negotiations or stipulations on the same matter, and indicating that evidence of separate oral agreement is never admissible where inconsistent with express terms of a subsequent writing); Glende Motor Co. v. Superior Ct. (United California Bank, et al.), 205 Cal.Rptr. 682, 686 (Cal.Ct.App.1984) (noting that, under California law, unequivocal acceptance of counteroffer creates a binding contract). The district court's conclusion that Dierickx consented to a general release is thus unassailable.
 
 
 20
 Dierickx also argues that there was no binding written settlement because, in his December 10 reply fax, Dierickx told Allstate that "I trust you will faithfully transcribe said terms in the necessary documents to carry this agreement to completion." SER at 3. Dierickx contends that because such "necessary documents" were never prepared, there was no binding agreement. This argument too must fail. Rather than suggesting that no agreement was reached, Dierickx's language suggests that Dierickx believed that the terms of the agreement had been finalized, and needed only to be "faithfully transcribed" into the appropriate documents. This language does not undercut Dierickx's unambiguous written acceptance of the terms set forth in Allstate's fax. See, e.g., Gavina v. Smith, 154 P.2d 681, 682-83 (Cal.1944) (where parties have agreed in writing on essential terms, agreement is binding even though parties contemplated preparation of a formal instrument and the instrument was never created).
 
 
 21
 In the course of arguing that the parties never agreed to terms, Dierickx further contends that Allstate repudiated the agreement when, the day after the exchange of faxes, it tried to rectify the typographical error that had led it to list the settlement sum as $44,530 rather than $43,530. Dierickx claims that, in a fax sent on December 11, 1991 and in a phone call made the following day, Allstate employee Drucker repudiated the agreement. Apart from Dierickx's unsupported allegation, however, there is no evidence of repudiation. In the December 11 fax construed by Dierickx as a repudiation, for example, Drucker described the error as merely a "typographical error," and emphasized that because the parties had agreed orally to a figure of $43,530, the proper legal remedy would be to reform the contract to make the written terms consistent with the oral agreement. Appellant's Supplemental Submission (December 22, 1993) at 24-25. Because the record strongly suggests that neither Drucker nor anyone else at Allstate ever sought anything more than correction of a clerical error, we conclude that Dierickx's repudiation defense is without merit.
 
 
 22
 Dierickx also puts forward a procedural challenge. He contends that, because he contests whether a settlement was ever agreed to, the district court, at a minimum, should have held an evidentiary hearing to determine whether or not a settlement had been reached. Although it is true that "[w]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing," Callie v. Near, 829 F.2d 888, 890 (9th Cir.1987), no hearing was necessary here because the terms set forth in the faxes exchanged on December 10, 1991 are unambiguous, leaving no material facts in dispute.
 
 
 23
 Dierickx also contends that, even if the district court was right to conclude that a settlement was reached, the district court was obliged by the Doctrine of Unclean Hands to refuse to enforce the agreement. Dierickx claims that Allstate's various counsel engaged in unethical dealings, taking advantage of him by addressing their settlement offers to him personally when they should have known that he was represented by counsel. This argument is also without merit.
 
 
 24
 Although it is true that a trial court has discretion to deny relief when presented with evidence that counsel improperly communicated directly with the opposing party, see e.g., Pepper v. Superior Ct., 142 Cal.Rptr. 759, 763 (Cal.Ct.App.1977), there is no evidence of improper conduct here. It is uncontested that, soon after settlement discussions with Allstate began, Dierickx directed Allstate to negotiate directly with him rather than with his attorney, Ackerman, and that he then formally substituted himself, in pro per, as attorney of record. It is also uncontested that between November 26, the date on which Dierickx filed and executed the substitution of attorney, and December 10, the date on which the settlement was concluded, Dierickx neither formally nor informally requested that Allstate direct its settlement offers to anyone other than himself. Baker did not become attorney of record until early January 1992, three weeks after the settlement agreement had been reached. Accordingly, we conclude that Allstate had no obligation to contact Baker.
 
 
 25
 Dierickx also suggests that at the time the settlement was being negotiated, Allstate employee Drucker improperly held himself out to be an attorney. Dierickx himself, however, reported that upon first being contacted by Drucker on December 12, 1991, Drucker told Dierickx that he was a new lawyer due to be sworn in on December 16, 1991. Declaration of Dierickx in Opposition to Allstate's Motion to Compel Enforcement of Settlement Agreement, Appellant's Supplemental Submission (December 22, 1993) at 10. Drucker thus did not misrepresent his status. Dierickx presented no evidence, moreover, suggesting that it is improper for an insurance company employee who is not a licensed attorney to take part in settlement-related communications with a client of the company.
 
 
 26
 Dierickx's final challenge to the enforceability of the agreement is that the settlement is unenforceable under Sec. 664.6 of the California Code of Civil Procedure, a provision that allows a court to enforce a settlement only if agreed to "in writing or orally before the court." Cal.Civ.Proc.Code Sec. 664.6 (Deerings 1992). Dierickx contends that because there was no final agreement in writing, the court had no power to enter judgment. Allstate counters that Sec. 664.6 provides a state procedural mechanism that does not apply in federal court, and, in the alternative, argues that the December 10 exchange of faxes meets the requirements of the provision. For the reasons detailed above, we agree with Allstate that the December 10 faxes together constitute a written settlement agreement. Accordingly, without deciding the question of whether, under Erie, the district court was obligated to apply the California statute, we conclude that, whether or not the statute applies, Dierickx's argument fails.
 
 
 27
 II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ENFORCING THE SETTLEMENT AGREEMENT
 
 A. Standard of Review
 
 28
 This court reviews for abuse of discretion both the district court's decision to enforce a settlement agreement, Adams v. Johns-Manville Corp., 876 F.2d 702, 704 (9th Cir.1989), and the district court's denial of a motion for leave to amend the complaint to add additional parties, Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir.1990).
 
 B. Analysis
 
 29
 Most of Dierickx's brief is devoted to the argument that the parties never agreed to a settlement. These arguments, as discussed above, are without merit. Apart from Dierickx's mistaken contention that the district court had a duty to conduct an evidentiary hearing, Dierickx does not direct any arguments to the question of whether, assuming that a settlement agreement existed, the district court abused its discretion when it decided to enforce the agreement. The only remaining arguments raised by Dierickx are directed at the district court's refusal to allow him to amend his complaint. None of these arguments, however, persuasively shows that the district court abused its discretion.
 
 
 30
 Dierickx argues that he should have been allowed to amend his complaint because he had plausible claims to make against the Cordovas and against the two agents who were responsible for selling him the two Allstate policies. It is unclear, however, why Dierickx did not name these parties months earlier: Dierickx did not make his motion to add the new parties until February 25, 1992, roughly two months after Allstate's counsel had informed him that Allstate would seek court enforcement of the settlement agreement.
 
 
 31
 Dierickx's best explanation for the timing of his motion is that he did not discover the true nature of the insurance policy issued in the Cordovas' name until three weeks after the December 10 exchange of faxes. Dierickx implies that, because he did not know the true nature of the policy, and because Allstate did not come forward with the information, the settlement negotiations were tainted; consequently, he contends that the district court should have used its discretionary powers to deny enforcement of the settlement. The defect in this reasoning is that Dierickx himself actually had known about the second policy for years, and, for at least three months before the settlement negotiations, he had been aware of the potential relevance of this policy to his pending suit. In a letter to Allstate dated August 18, 1991, Dierickx had written:
 
 
 32
 A recent investigation reveals that Allstate had issued two policies to cover the same risks upon the same property thereby collecting two different premiums to cover a single risk. Said information was never revealed by Allstate to the Undersigned further proving Allstate's duplicity.
 
 
 33
 Exhibit A, Allstate's Motion for Sanctions at 10. Accordingly, Dierickx's claim that the district court abused its discretion when it did not take into account his late discovery of the "true nature" of the second policy must fail.
 
 
 34
 III. THE DISTRICT COURT DID NOT ERR IN ADOPTING THE PROPOSED ORDER PREPARED BY ALLSTATE
 
 
 35
 Dierickx contends that the order drafted by Allstate and adopted word for word by the district court does not accurately reflect the order issued by the district court at the April 13, 1991 hearing. As Allstate correctly points out, however, Dierickx waived his right to challenge the language of the order on appeal when he failed to file timely objections to the form of the order as required by Central District Local Rule 14.6
 
 
 36
 Dierickx argues that the district court order improperly goes beyond the scope of the settlement and releases all possible defendants from liability and that it improperly requires that Dierickx waive his rights under Sec. 1542 of the California Code of Civil Procedure. The first contention is without merit: the order, by its express terms, dismisses Dierickx's claim only against Allstate and its employees, agents and affiliates. More significantly, however, both contentions must fail because Dierickx did not comply with Central District Local Rule 14.6. See, e.g., Newel v. Bank of Palm Springs, 70 B.R. 116, 117 (Bankr. 9th Cir.1986) (applying Rule 14.6 and declaring objections to order untimely). Rule 14.6 states that, after the prevailing party serves opposing counsel with a copy of the proposed order, opposing counsel has five court days to "file and serve objections to the form of the document and the grounds thereof," and the Rule expressly provides that "[t]he failure to file timely objections shall be deemed a waiver of any defects in the form of the document."[2] In the present case, it is uncontested that Allstate's counsel served a copy of the order on counsel for Dierickx and that Dierickx made no objections to the language of the order within the prescribed five day period. Accordingly, pursuant to Central District Local Rule 14.6, Dierickx waived his right to contest the language of the order on appeal.
 
 IV. SANCTIONS ARE NOT APPROPRIATE
 
 37
 Allstate has moved for sanctions against Dierickx and his counsel pursuant to Fed.R.App.P. 38 for bringing a frivolous appeal, and against counsel for Dierickx pursuant to 28 U.S.C. Sec. 1937 for bad faith misrepresentation of fact. We find sanctions inappropriate.
 
 
 38
 Rule 38 sanctions are appropriate where "the result is obvious, or the arguments of error are wholly without merit." Williams v. General Services Admin., 905 F.2d 308, 312 (9th Cir.1990) (emphasis added) (citing DeWitt v. Western Pacific Railroad Co., 719 F.2d 1448, 1451 (9th Cir.1983)). Allstate contends that Dierickx's claim that the parties lacked mutuality of consent is wholly without merit. Although the scope of the release was set forth unambiguously in Allstate's fax, and although we ultimately find Dierickx's claim to be without merit, there was some basis for the claim in the fact that the two faxes differed slightly in how they framed the agreement. Dierickx, moreover, seems to have acted precipitously in signing on to the agreement and, notwithstanding his lawyer's December 10, 1991 admonition that Allstate probably wanted to "dispose of everything," it is still not clear whether Dierickx, conducting the negotiations himself, realized the import of the terms laid out by Allstate in its December 10 fax. Dierickx's claim that he deserved an evidentiary hearing on whether or not a complete settlement agreement had been reached, though ultimately unsuccessful, was also not entirely frivolous.
 
 
 39
 Sanctions against counsel pursuant to 28 U.S.C. Sec. 1927 are appropriate where counsel misrepresents facts, makes unwarranted claims, or otherwise multiplies the proceedings vexatiously. See Malhiot v. Southern California Retail Clerks Union, 735 F.2d 1133, 1138 (9th Cir.1984), cert. denied sub nom Jampol v. Southern Cal. Retail Clerks Union, 469 U.S. 1189 (1985). Sanctions under Sec. 1927 require "an express finding that counsel acted willfully, intentionally, recklessly, or in bad faith." United States v. Austin, 749 F.2d 1407, 1408 (9th Cir.1985). In this case, sanctions should not be assessed because, to the extent that there were misstatements of fact in Dierickx's appellate brief, they seem to have been the product of error, not deliberate misrepresentation.
 
 
 40
 Allstate contends that Sec. 1927 sanctions are appropriate because Dierickx's counsel misrepresented the facts when he claimed on appeal that Dierickx only discovered the "true nature" of the second Allstate policy in January 1992. Allstate points out that Dierickx's letter of August 18, 1991 mentioning the second policy and accusing Allstate of duplicity suggests that Dierickx knew enough about the second policy three months prior to settlement to have pursued it had he so wished. Although the factual basis of Allstate's claim is sound, Dierickx's new counsel, Baker, seems not to have been aware of the extent of his client's knowledge when he prepared the brief. Dierickx contends that he did not keep a copy of the August 18 letter, and Baker, in his sworn statement, asserts that the copy of the August 18 letter Allstate included in the discovery materials sent to Dierickx (the only copy Baker was able to consult) included only the first and third pages of the letter. The passage in which Dierickx mentions the second Allstate policy is on the second page, and so was not available to Baker prior to Allstate's motion for sanctions. Because the misstatement of fact was not made in bad faith, Sec. 1927 sanctions are not appropriate.
 
 CONCLUSION
 
 41
 The enforcement of settlement agreements is favored in the law, and we see no reason to deviate from that principle here. Accordingly, we hold that the district court did not abuse its discretion in compelling enforcement of the agreement entered into between Dierickx and Allstate. We decline to assess sanctions against Dierickx, however, because the evidence shows that he brought this appeal in good faith.
 
 
 42
 AFFIRMED.
 
 
 
 *
 The Honorable Hubert L. Will, United States District Court for the Northern District of Illinois, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although Dierickx claimed that, in a letter dated December 8, 1991, he had provided written notice to Allstate that he had retained Baker as his new attorney, Dierickx did not challenge Allstate's response that the December 8 letter only stated in general terms that case files had been transferred to Dierickx's counsel in preparation for litigation. Dierickx did not inform Allstate in the letter that Baker was authorized to be involved in settlement discussions, did not provide Allstate with Baker's phone number or address, and, as discussed below, Baker was not substituted in as attorney of record until weeks later
 
 
 [2]
 Central District Local Rule 14.6 provides in full as follows: "Opposing counsel may, within five (5) court days after service of a copy of a document prepared pursuant to Local Rules 14.1, 14.3 or 14.4, file and serve objections to the form of the document and the grounds thereof. The failure to file timely objections shall be deemed a waiver of any defects in the form of the document."