[No. B104031. Second Dist., Div. Two. Dec. 10, 1998.]

CARY STEPHEN WINOGRAD, Plaintiff and Appellant, v.
AMERICAN BROADCASTING COMPANY, Defendant and Respondent.

**COUNSEL**

Fogel, Feldman, Ostrov, Ringler & Klevens, Larry R. Feldman, Lester G. Ostrov, Jerome L. Ringer and Thomas H. Peters for Plaintiff and Appellant.

Brumer, Rubin & Weston, William S. Weston, Paul L. Shardlow and Karineh J. Minassian for Defendant and Respondent.

## OPINION

**ZEBROWSKI, J.**—This case concerns the interpretation and application of a stipulation entered into orally before the court. The stipulation constituted an agreement to arbitrate, but it intermingled characteristics of both judicial and contractual arbitration. For that reason it was ambiguous, and a dispute over its meaning resulted. The trial court denied plaintiff's petition to compel arbitration, and plaintiff appeals. (Code Civ. Proc., § 1294 ["An aggrieved party may appeal from . . . [¶] . . . [a]n order . . . denying a petition to compel arbitration."].)

The primary issue on appeal is what appellate standard applies to review of the trial court's construction of the parties' agreement. The agreement was reflected in a court transcript of an oral conference and interpreted in light of other matters in the court record, the procedural posture of the case, and related factors. The matter was extensively briefed, including additional briefing requested by the court. The authorities show that the determinative question is this: was the trial court's ruling based on reasonable inferences, supported by substantial evidence? It was, and hence we will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The case underlying the arbitration controversy arose out of a car accident in which plaintiff Cary Winograd's car was rear-ended by a car on an errand for defendant American Broadcasting Company (ABC). The matter was submitted to judicial arbitration twice. In the first judicial arbitration in January of 1993, plaintiff was awarded $121,515.78, but ABC filed a request for a trial de novo. In October of 1993, during a mandatory settlement conference, the case was again ordered to judicial arbitration. This second judicial arbitration, conducted in November of 1993, yielded an award to plaintiff of $45,000. Plaintiff then filed a request for trial de novo. Trial was scheduled for January 6, 1994. Counsel for both sides appeared on that date. After some colloquy before Judge David Rothman, the matter was transferred to Judge Richard Harris for a settlement conference. The conference before Judge Harris did not yield an outright settlement agreement, but did yield the stipulation now in issue.

The transcript of proceedings before Judge Harris shows that he recited these elements of the parties' stipulation on the record: 1) the parties had not reached a settlement; 2) they had instead "agreed to place this matter into a binding arbitration"; 3) "de novo hearing" was waived; 4) appeal was waived; 5) four specific Judicial Arbitration and Mediation Services (JAMS) judges were identified, with the proviso that the first three available were to

act as a tripartite panel to decide the case; 6) the plaintiff was to receive not less than $25,000 nor more than $225,000; 7) the arbitrators were to be told that the arbitration was binding, but not the high and low limits; and 8) the arbitrators' fees were to be split one-half to plaintiff and one-half to defendant. After reciting these elements of the stipulation, Judge Harris stated: "There are two further things. This matter is about to go five-years and the parties have executed and agree to execute forthwith a stipulation in writing extending the time until January 1, 1995, within which this matter must be brought to trial. And the arbitration will, of course, take place before that."

After clarifying some additional matters concerning a related small claims action and some pleading issues, Judge Harris stated: "I believe that states the full stipulation. Is there anything to add for the plaintiff?" To that, plaintiff's counsel responded: "The only thing I might want put in is if for some reason we can't get three of these judges available to sit as a panel before the five-years runs, that we can agree mutually to substitute another judge in their place." Judge Harris then stated: "Oh, absolutely. And I want to tell you that do not let this sit around," and added "And in that connection, I will make myself available to you if you have some difficulties in that regard."

After some further discussion about arranging for the arbitration to take place before the five-year date (as extended by stipulation), Judge Harris asked: "Anything to add for defendants?" Counsel for ABC responded: "No, I just understand that discovery's cut off, right?" Plaintiff's counsel responded: "Absolutely," and Judge Harris added: "Discovery is cut off absolutely."

Judge Harris then turned to the subject of authority to stipulate. He noted that plaintiff was not present, but recited that he was available by phone at work and that plaintiff's counsel had talked to him by phone and had "full authority to enter into this stipulation and to bind him to it." Plaintiff's counsel responded "yes." Judge Harris then stated that he understood that ABC's counsel had talked with ABC and its insurance adjuster by phone and had "full authority from Kemper Insurance and ABC to enter into this stipulation and to bind them to it." ABC's counsel responded: "Correct, Your Honor." Judge Harris then asked: "All right, anything else from anybody?" and received a negative response. Plaintiff's counsel then asked for the case number "just so that I can put it on the stip." After some proceedings held off the record, the court ordered jury fees refunded, and the proceedings concluded.

The minute order for January 6, 1994 (the date of the stipulation described above) states as follows:

"Counsel stipulate to binding arbitration, waiving jury trial, trial de novo and right of appeal. Further terms are stated in chambers on the record and reflected in the verbatim recording. Jury fees on deposit are ordered refunded.

"Stipulation to extend the five year date to 1/1/95 is signed and filed.

"Binding arbitration control date is set on 11/2/94 at 10:00 A.M. in Department WE A.

"Notice is waived."

On November 2, 1994 (the "binding arbitration control date" set in the minute order), defendant's counsel appeared in department WE A, but plaintiff's counsel did not. Upon hearing that the matter had not yet been arbitrated, Judge Rothman first stated that the "matter is placed on the court's calendar then for a court's motion to dismiss." Then, after confirming that a binding arbitration agreement was in place, he reconsidered and dismissed the case without prejudice "since it's a binding arbitration." Defense counsel agreed to give notice. The minute order for that date states: "Case dismissed without prejudice. Case in binding arbitration. Order of dismissal signed and filed." The order of dismissal states that the case is dismissed "due to case pending in binding arbitration."

Defense counsel's notice of these events was not completely accurate. It stated that "this matter came on regularly for hearing an order to show cause re: dismissal after submission to binding arbitration." However, no OSC (order to show cause) re dismissal had been set; the hearing instead was a "binding arbitration control date." The notice sent by defense counsel continued: "Based upon the fact that this matter had not yet been submitted to binding arbitration prior to the date set by the court for an order to show cause re: dismissal once the matter had been ordered into binding arbitration, this matter was dismissed." This again was in part inaccurate. There had been no OSC re dismissal set, and the matter was dismissed "without prejudice" on the grounds that it was in binding arbitration.

Following his receipt of this notice, plaintiff's counsel telephoned one of defendant's counsel. He was upset, stated that he "blew it," and asked if the dismissal could be set aside by stipulation so that he would not have to move for relief pursuant to Code of Civil Procedure section 473. The defense counsel who received the phone call referred plaintiff's counsel to a second defense counsel, but plaintiff's counsel never called that second defense counsel.

Nothing further happened until January 28, 1996 (about 13 months later and more than a year after the 5-year date as extended by stipulation), when a secretary at the offices of plaintiff's counsel telephoned defense counsel. The secretary explained that the counsel who originally had been handling the case for plaintiff had left the firm. She stated that the purpose of her call was to "schedule the arbitration." Defense counsel refused to schedule the arbitration, explaining that the case had earlier been dismissed. On May 3, 1996, plaintiff filed a petition to compel arbitration. The petition was brought pursuant to Code of Civil Procedure section 1281.2, and argued that the stipulation created a contract to arbitrate that "has a life of its own outside the judicial system."[1] Plaintiff thus argued that the arbitration agreement remained enforceable despite the expiration of the five-year period (as extended by stipulation).

Attached to plaintiff's petition to compel arbitration was a copy of the February 23, 1996, letter from defense counsel in which defense counsel refused to acquiesce in plaintiff's counsel's request to set an arbitration date. That letter contended that "[o]n January 6, 1994, the parties did agree to engage in binding arbitration. However, that binding arbitration was to be conducted in lieu of trial under the jurisdiction and supervision of the court, and not as a separate proceeding outside the jurisdiction of the court. The parties agreed to extend the five-year statute to January 1, 1995. The court further set the date of November 2, 1994 as a binding arbitration control date, in order to maintain control and jurisdiction over the matter to assure that it would be completed prior to November 2, 1994. [¶] In the ensuing months, [another defense counsel] and I both made substantial efforts to arrange for a binding arbitration. [Plaintiff's original counsel] of your office did nothing other than ignore our letters and fail to return our many phone calls. It was for this reason that the court dismissed the action, and the arbitration with it, on November 2, 1994."

---

[1]Code of Civil Procedure section 1281.2 provides that "[o]n the petition of a party to an arbitration agreement alleging the existence of a *written agreement* to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, that court shall order the petitioner and respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ." (Italics added.) Plaintiff alleged that the trial court's minute order summarizing the agreement on the record before Judge Harris was sufficient to satisfy the writing requirement of section 1281.2, although the minute order did not contain all the terms of the agreement. ABC contends that a minute order is not sufficient. The trial judge did not rule on whether a minute order is sufficient or not. We find that the trial judge ruled properly on the ground he did rely upon (an interpretation of the terms of the agreement adverse to plaintiff's position), and hence do not reach the issue of whether a minute order reflecting an agreement to arbitrate is enforceable pursuant to section 1281.2. This issue will likely be avoided in most cases by a comprehensive written and signed stipulation. Moreover, the use of a written stipulation might render applicable the rationale of *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839], discussed below in the text, allowing in some cases de novo review on appeal.

Defendant opposed the petition with three contentions: First, defendant contended that the stipulation was a stipulation for judicial arbitration under the continuing jurisdiction of the court, modified only by the waiver of right to trial de novo, appeal, etc. If the stipulation was for a judicial arbitration, which is an adjunct to litigation, arbitration could not be ordered because, by the time of plaintiff's petition, the five-year date (as extended by the stipulation) had passed and dismissal was mandatory. Second, in the alternative, defendant contended that if the court construed the stipulation as a stipulation for contractual arbitration, one of the material terms of that contract was that the arbitration be concluded before the extended five-year date. In that event, defendant contended that arbitration could not be ordered because of plaintiff's failure to arrange to arbitrate within the term of the arbitration agreement. Third, defendant contended that plaintiff had waived his right to arbitrate by failing to take any action to effect the arbitration for almost two and a half years after the stipulation. Although defendant did not use the term "estoppel," defendant did contend that this delay had prejudiced defendant. Defendant's opposition presented evidence of substantial efforts by defense counsel to schedule the arbitration before the dismissal by making phone calls and sending letters to plaintiff's counsel. Most of these calls and letters were ignored, but on one occasion a lunch appointment was made to discuss scheduling. Plaintiff's counsel cancelled the lunch meeting, however, and subsequently was unresponsive.

The petition to compel arbitration was heard before Judge Hiroshi Fujisaki on May 28, 1996. After conducting a hearing, Judge Fujisaki entered a minute order stating as follows: "Order re binding arbitration by stipulation also included a stipulation to extend the 5 year statute to 01-5-95. Court finds no good reason for plaintiff's inaction, and that the action as of 1-5-95 is no longer valid."[2] The petition was denied, and this appeal followed.

## DISCUSSION

■ A ruling by a trial court is presumed correct, and ambiguities are resolved in favor of affirmance. (See, e.g., *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227] ["A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness."]; *Munoz* v. *Olin* (1979) 24 Cal.3d 629, 635-636 [156 Cal.Rptr. 727, 596 P.2d 1143]; *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; see generally, Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1997) ¶ 8:15 et seq., p.

---

[2]The five-year date was actually extended to January 1, 1995, but the four-day discrepancy in Judge Fujisaki's minute order is immaterial.

8-4 et seq.) The burden of demonstrating error rests on the appellant. (*Id.* at ¶ 8:17, p. 8-4.)

■ "A stipulation is a contract . . . , and is sometimes said to be governed by the usual rules of construction of other contracts. [Citations]." (1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 304, pp. 373-374.) A contract must be interpreted so as to give effect to the mutual intent of the parties. (Civ. Code § 1636.) The terms of a contract are determined by objective rather than by subjective criteria. The question is what the parties' objective manifestations of agreement or objective expressions of intent would lead a reasonable person to believe. (See, e.g., *Meyer* v. *Benko* (1976) 55 Cal.App.3d 937, 942-943 [127 Cal.Rptr. 846]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts § 684 et seq., p. 617 et seq.)

■ When the trial court has resolved a disputed factual issue, the appellate courts review the ruling according to the substantial evidence rule. If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶¶ 8:43, 8:38 et seq., pp. 8-16 to 8-17, 815 et seq.) ■ A disputed factual issue in the instant case flows from the test for determination of the terms of a contract: what would the parties' objective manifestations of agreement and objective expressions of intent lead a reasonable person to believe they were agreeing to? (See, e.g., *Meyer* v. *Benko, supra* 55 Cal.App.3d 937.) The question on appeal thus resolves into whether the record contains substantial evidence which could lead a reasonable person to construe the agreement so as to preclude an order to arbitrate once the extended five-year date of January 1, 1995, had passed. (Cf. *In re Marriage of Assemi* (1994) 7 Cal.4th 896 [30 Cal.Rptr.2d 265, 872 P.2d 1190] [when a judge interprets and applies a stipulation under Code of Civil Procedure section 664.6, the governing standard of review is substantial evidence].)

Plaintiff argues against the conclusion that the substantial evidence test applies by invoking the rule that the interpretation of a *writing* is a matter of law, even if extrinsic evidence has been introduced, so long as the extrinsic evidence is not conflicting. (See, e.g., *Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 377, pp. 426-427.) Plaintiff argues that since the stipulation was placed on the record and transcribed, it is a "writing" subject to the rule that interpretations of a writing are reviewed de novo on appeal so long as no conflicting extrinsic evidence has been presented. However, there are points of distinction between the instant situation and the typical situation in which a "writing" must be construed. The stipulation in question

consists not of a "writing," but instead a colloquy on the record between the court and two counsel, occurring in the context of a particular procedural posture which reflected upon the parties' respective motivations. Also considered by the trial judge was evidence of conduct by counsel which, although not disputed, was subject to differing interpretations. Thus although what occurred on the record before Judges Harris and Rothman, what the procedural posture of the case was, and what occurred thereafter among counsel, is not disputed, how to evaluate the import of these events is disputed.

This situation is governed by the rule of conflicting inferences. (See, e.g., 9 Witkin, Cal. Procedure, *supra*, Appeal, § 370, pp. 420-421 ["Rule of Conflicting Inferences"].) ▮ "The rule of *conflicting evidence* . . . is usually invoked where evidence on one side is contradicted by evidence on the other. If the evidence is without conflict, and the decision depends on inferences, is the appellate court at liberty to draw its own legitimate inferences and decide the case accordingly? The answer is no, under that part of the conflicting evidence rule that may be termed the rule of conflicting inferences: Where different inferences may reasonably be drawn from undisputed evidence, the conclusion of the jury or trial judge must be accepted by the appellate court." (*Ibid.*) Witkin quotes several statements of the rule, among them these two: " '[E]ven though all the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deduced from those facts, there still remains in the case a question of fact to be determined by the . . . trial judge . . . . In so far as the evidence is subject to opposing inferences, it must upon a review thereof be regarded in the light most favorable to the support of the judgment.' *Mah See* v. *North Amer. Acc. Ins. Co.* (1923) 190 [Cal.] 421, 426 . . . ." (9 Witkin, Cal. Procedure, *supra*, Appeal, § 370, p. 421.) " 'Even if this court were of the opinion that that determination was wrong, it would not have the power to substitute its deductions for those of the trial court. For, as has so often been said, when opposing inferences may reasonably be drawn from the facts in a case, the finding of the trial court will not be set aside.' *McIntyre* v. *Doe & Roe* (1954) 125 [Cal.App.]2d 285, 287 . . . ." (*Ibid.*)

The court in *Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 890 [122 Cal.Rptr. 249], dealt with the analogous situation of a case submitted on stipulated facts. The *Oliver & Williams* court took a different analytical tack, stating: "This case was submitted on a stipulation of facts with documents. There was no conflict in the evidence. No oral evidence was introduced. The trial court was not confronted with any question of the credibility of witnesses. Under such circumstances the

issue becomes a question of law which can be resolved by an appellate court as well as a trial court." (*Id.* at p. 894.) In *McKinney v. Kull* (1981) 118 Cal.App.3d 951 [173 Cal.Rptr. 696], however, Justice Blease evaluated this passage from *Oliver & Williams* as follows: "We disagree with that statement. [¶] It is readily apparent that unless the parties stipulate to an ultimate fact, which is tantamount to the elimination of an issue from the case, agreed facts or events provide only the basis for an inference of other facts which transform the events into matters of direct legal significance. Where the parties stipulate to facts which form the basis for a further inference of fact, the factual inference to be drawn is not per se a question of law and the law controls only the reasonableness of the inference. . . . Where the inferences are conflicting, it is for the trier of fact to resolve the conflict . . . ." (*McKinney, supra*, at pp. 955-956; see also 9 Witkin, Cal. Procedure, *supra*, Appeal, § 373, pp. 423-424 [discussing *Oliver & Williams* and *McKinney*].)

Justice Blease's analysis in *McKinney* was sound and applies here. Here, in order to resolve the dispute regarding what the parties had agreed to, the court had to draw an inference from the available objective evidence regarding the parties' contractual intent. Specifically, the court had to determine, based on the parties' objective manifestations of agreement and intent, what a reasonable objective observer would believe was the intended purpose and effect of the extension of the five-year date. The objective facts in the record could give rise to three different contractual interpretations.

First, the stipulation could be construed as a contract to arbitrate independent of the court's jurisdiction. The simultaneous extension of the five-year date could be interpreted simply as done in an abundance of caution, and not as a qualification or limitation on the agreement to arbitrate. The waiver of right of appeal and trial de novo, and the specification that the arbitration would be binding could conceivably be construed as supporting this conclusion, although such attributes normally accompany an agreement for contractual arbitration even without being expressly stated. When Judge Rothman dismissed the case without prejudice on the "binding arbitration control date," he was apparently concluding that the parties had agreed to contractual arbitration. If this construction were chosen, and providing no statute of limitations, estoppel or other bar intervened, arbitration could still be ordered today notwithstanding the delay.

Second, the stipulation could be construed as calling for a third judicial arbitration, this time modified by the further agreement that the third judicial arbitration be binding—reinforced by the waiver of appeal and trial de novo—and also modified by the further agreement that three JAMS judges conduct the arbitration, etc. The extension of the five-year date could then be

construed as necessary to allow the judicial arbitration to proceed before dismissal of the case became mandatory, and inconsistent with a contractual arbitration, as to which the five-year date would be irrelevant. The setting of a "binding arbitration control date" would be consistent with this interpretation, since the court would have no legitimate basis on which to be involved if this were a true contractual arbitration. Additionally, if the stipulation called for a contractual arbitration, it would be unusual for there to be an express waiver of right to trial de novo since such a right does not exist in the context of contractual arbitration. (See, e.g., *Blanton* v. *WomanCare, Inc.* (1985) 38 Cal.3d 396, 401 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109] ["[o]pportunity for trial de novo is what principally distinguishes court-annexed arbitration pursuant to the Judicial Arbitration Act . . . ."].) Moreover, the discussions about discovery being cut off and about substitute arbitrators to ensure an arbitration before the five-year date are consistent with a conclusion that the court retained jurisdiction as if this were a judicial arbitration, and inconsistent with a conclusion that the court had no ongoing supervisory function, as would be the case if the parties had agreed to contractual arbitration. If this judicial arbitration construction were chosen, arbitration would now be barred, since judicial arbitration is merely an adjunct to litigation (*Blanton*, *supra*, at p. 402, fn. 5), and litigation is now barred by the five-year statute.

Third, the stipulation could be construed as calling for contractual arbitration, but limited by the further material term that the arbitration had to be completed before the five-year date as extended. If this construction were chosen, arbitration would now be barred because the parties' agreement to arbitrate was limited to arbitration before the agreed date, which has now passed. Moreover, neither could the case be litigated, since the five-year statute has expired.

Judge Fujisaki concluded that the agreement, by its own terms, "died." He stated: "by the express terms of putting the five-year statute over to that date and Judge Harris saying it's got to be tried by that date or settled before, that pretty much tells you that that's the end point of this lawsuit; doesn't it?" He considered the dismissal by Judge Rothman as compared with the other evidence, stating: "this is a case where there are two vectors, if you will. One vector is the five-year limitation. The other vector is the binding arbitration vector that Judge Rothman had in his head . . . that when parties agree to a binding arbitration, it's no longer our business and you could just dismiss the case outright because you have a contract to arbitrate. . . . Overlay that with what's on the record with regards to what on the record is the understanding that [the] parties had before Judge Harris; it was that the case is going to be tried by January 1, 1995 or settled by that

time . . . . He said it must be arbitrated by that time. . . . That's it. So everybody knew it. . . . So if you want to take the contract's concept of it, a contract reduced to writing by oral proceedings before a judge that's been transcribed, I think you're limited with the four corners of that document and you're still not in a viable position." In conclusion, Judge Fujisaki stated: "I think by not arbitrating this thing by January 1 [of 1995], by the terms of your understanding, it died."

Substantial evidence supports Judge Fujisaki's evaluation of the parties' intent in entering into the stipulation, as evidenced by "the objective manifestations of agreement or expressions of intent" of the parties. (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 684 et seq., p. 617 et seq.) A "reasonable person" could conclude that the parties agreed to forego trial and arbitrate only on condition that the arbitration take place before the five-year date as extended. That being the case, we can find no error in Judge Fujisaki's decision, and it must be affirmed. Moreover, the additional evidence that the parties waived trial de novo, inquired as to discovery being cut off, questioned whether different judges could be substituted before the five-year date, set a "binding arbitration control date," etc., tends to indicate an agreement to a modified form of judicial arbitration, rather than an agreement to unfettered contractual arbitration. Hence of the three constructions possible, unfettered contractual arbitration is the least supportable, yet it is the only one that would allow for an order to arbitrate at this late date. We can find no error that this least supported of the three possible constructions was not chosen.[3]

## DISPOSITION

The order denying plaintiff's petition to compel arbitration is affirmed. Each side to bear their own costs on appeal.

Fukuto, Acting P. J., and Nott, J., concurred.

On January 7, 1999, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 9, 1999.

---

[3]This appeal concerns only plaintiff's petition to compel arbitration. Although we find that the trial court did not err in ruling that plaintiff had no contractual right to compel arbitration at the time of plaintiff's petition, we make no ruling upon whether plaintiff has the right to enforce any other term of the parties' agreement.