Filed 12/23/14  Ricardo M. v. Super. Ct. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICARDO M.,  Petitioner,  v.  THE SUPERIOR COURT OF KERN COUNTY,  Respondent;  KERN COUNTY DEPARTMENT OF HUMAN SERVICES,  Real Party in Interest. | F070239  (Super. Ct. Nos. JD131877, JD131878)  **OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  William D. Palmer, Judge.

Margaret H. Smith, for Petitioner.

No appearance for Respondent.

Theresa A. Goldner, County Counsel, and Thomas G. Morgan, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Franson, J. and Peña, J.

At a contested six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e)),[1] in October 2014, the juvenile court terminated Ricardo M.'s reunification services as to his six-year-old son R.M. and three-year-old daughter L.M. and set a section 366.26 hearing to implement a permanent plan. Ricardo challenges the juvenile court's setting order by extraordinary writ petition. (Cal. Rules of Court, rule 8.450.) He contends there was insufficient evidence to support the juvenile court's finding that he was provided reasonable services. He also contends the juvenile court erred in not placing the children with their paternal grandparents. Ricardo asks this court to issue a writ directing the juvenile court to vacate its orders terminating his reunification services and setting a section 366.26 hearing and to order an additional six months of reunification services for him. We find no error and deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In December 2013, the department took then five-year-old R.M., two-year-old L.M., and their eight-week-old half brother Raymond into protective custody after Ricardo and the children's mother were arrested for being under the influence of a controlled substance. The children were placed together in foster care.

Ricardo told the investigating social worker that he was not Raymond's biological father but held Raymond out as his own child. He was aware that the mother used drugs and that Raymond was born positive for methamphetamine. Ricardo said methamphetamine was his drug of choice.

On December 27, 2013, the juvenile court convened the initial hearing. Ricardo appeared and the court appointed him counsel. The court continued the hearing because the mother was not present to testify as to Ricardo's paternity status. The court deemed Ricardo the children's alleged father and granted him visitation pending the next hearing.

---

[1]	All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Following the initial hearing, family services social worker Juan Arredondo met with Ricardo to discuss services. Ricardo agreed to participate in counseling for child neglect, parenting, substance abuse, and anger management. He signed a copy of his services plan and was given a copy of it. On that same day, Arredondo referred Ricardo to the Kern County Mental Health Gatekeeper and to College Community Services for anger management and parenting. Ricardo completed a substance abuse assessment and was assessed as needing a "level 3" plan of care. His intake appointment was scheduled for January 8, 2014.

On January 3, 2014, Ricardo and mother appeared at the continued initial hearing. The juvenile court ordered the children detained and elevated Ricardo to presumed father status. The court ordered weekly supervised visitation for both parents.

On January 17, 2014, Ricardo's parents (paternal grandparents) submitted an application for placement of the children. On January 28, 2014, Ricardo and the mother were involved in a physical confrontation and were arrested.

On February 10, 2014, the juvenile court convened the jurisdictional hearing. Neither Ricardo nor the mother personally appeared. The juvenile court adjudged the children its dependents under section 300, subdivision (b). The paternal grandparents' placement application was still pending because they had not begun the live scan process.

On February 26, 2014, the juvenile court convened the dispositional hearing. Again neither Ricardo nor the mother appeared. The court ordered the children removed from parental custody and ordered reunification services for Ricardo and the mother. Ricardo's reunification plan required him to participate in counseling for anger management, parenting, and substance abuse and to submit to random drug testing.

Sometime in February or early March 2014, Ricardo was deported to Mexico. On March 5, 2014, he telephoned Arredondo using a pay phone and said he was then living in Jalisco, Mexico. Arredondo gave Ricardo his attorney's contact information and reminded him of his court-ordered services. Ricardo said he had a relative who had

3

contact with the local child protective services in Jalisco. He said he was not working and would have difficulty paying for his courses. He said he wanted to return and gain custody of the children. He said he would keep Arredondo updated on his case plan compliance. Arredondo told Ricardo that he could call the department collect. Arredondo sent Ricardo a monthly form letter from March to August 2014, listing the services he needed to complete. The letter advised Ricardo that the department would provide him referrals to specific agencies and assist him in completing his services plan requirements. It also listed the department's telephone number.

On August 14, 2014, Ricardo telephoned Arredondo and left a message that he was living in Tijuana, Mexico. The next day, Arredondo tried to reach Ricardo using the telephone number he left but received a message stating the call could not be connected as dialed. On August 18, 2014, Arredondo received a telephone call from Ricardo. Arredondo reviewed Ricardo's case plan requirements with him and verified his phone number and mailing address. Ricardo said he received the letters Arredondo sent. Ricardo said he was working and staying clean and doing his drug counseling. Arredondo told him the department needed proof of his compliance. Arredondo gave Ricardo the name of his new social worker and the contact information, including the fax number. During the conversation, Ricardo asked about the status of the paternal grandparents' application for placement. Arredondo explained that their application had been denied because the paternal grandmother was not honest about her husband's legal issues.

The department recommended in its report for the six-month review hearing that the juvenile court terminate Ricardo and the mother's reunification services as they had not made any progress with their case plans. The department reported that Ricardo had not faxed any documents. The mother's whereabouts were unknown.

On October 1, 2014, the juvenile court convened the contested six-month review hearing. Ricardo and the mother did not appear. Arredondo testified that he did not

4

investigate whether Ricardo's court-ordered services, including random drug testing, were available where Ricardo was residing in Mexico. He told Ricardo that Ricardo could send him letters but did not tell him he could contact the children by telephone. Ricardo's attorney asked Arredondo if he contacted the Mexican Consulate for assistance. Arredondo said he had not and did not know if that was the department's standard procedure in such a case.

Ricardo's attorney argued the department failed to provide Ricardo reasonable reunification services because Arredondo did not give him any direction as to where and how to drug test and did not facilitate visitation. The juvenile court disagreed and found the department provided Ricardo reasonable services. The court also found that Ricardo and the mother failed to regularly participate in and make substantive progress in their court-ordered treatment plans. Consequently, the court terminated their reunification services and set a section 366.26 hearing.

This petition ensued.[2]

## DISCUSSION

Ricardo contends the juvenile court erred in finding the department provided him reasonable services. We disagree.

When a child is removed from a parent's custody, the social services department must make a good faith effort to develop and implement reasonable family reunification services responsive to the needs of that family. (*In re Kristin W.* (1990) 222 Cal.App.3d 234, 254.) "The adequacy of a reunification plan and of the department's efforts are judged according to the circumstances of each case.… 'The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of success. [Citation.]' ... '[T]he record should show that the [department] identified the problems leading to the loss of custody, offered services designed to remedy those

---

[2] The mother did not file a writ petition.

5

problems, maintained reasonable contact with the [parent] during the course of the service plan, and made reasonable efforts to assist the [parent when] compliance proved difficult ....'" (*In re Ronell A*. (1996) 44 Cal.App.4th 1352, 1362.)

Thus, whether a parent was provided reasonable services is a two-part determination. The first determination is whether the reunification services selected by the department are reasonably tailored to address the problems that necessitated the juvenile court's intervention. The second determination is whether the department made reasonable efforts to assist the parent in accessing the services selected. In other words, the services plan content and the department's efforts to assist the parent in complying must be reasonable.

The reunification services are ordered into effect at the dispositional hearing and remain the order of the juvenile court unless the parent succeeds in having them modified by direct appeal from the dispositional orders or by filing a section 388 petition. In contrast, the reasonableness of the department's efforts is fluid and the juvenile court must determine at each review hearing whether the parent was provided reasonable services during the period under review.

On a challenge to the juvenile court's reasonable services finding, we view the evidence in a light most favorable to the respondent, indulging in all legitimate and reasonable inferences to uphold the finding. (*In re Misako R*. (1991) 2 Cal.App.4th 538, 545.) If substantial evidence supports the juvenile court's finding, we will not disturb it. (*Ibid.*) Moreover, under our review, services need not be perfect to be reasonable. Rather, the "standard is ... whether they were reasonable under the circumstances." (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969.) Since Ricardo bears the burden of demonstrating error on appeal (*Winograd v. America Broadcasting Co*. (1998) 68 Cal.App.4th 624, 632), he must show that the juvenile court's reasonable services finding is not supported by substantial evidence. We conclude he failed to meet his burden.

6

In this case, Ricardo participated in the development of his services plan and assented to its terms by signing it. He did not challenge the content of the plan by appealing from the dispositional order or seek to have it modified by filing a section 388 petition. Further, Arredondo provided Ricardo service referrals and Ricardo was ready to begin drug treatment when he was deported. In early March 2014, Ricardo contacted Arredondo, told him he was in Mexico and intimated he would contact Mexico's equivalent of the local child protective services agency. Ricardo did not contact Arredondo again until August. Nevertheless, Arredondo attempted to maintain contact with Ricardo by sending him reminder letters, providing him the department's telephone number, and telling Ricardo he could telephone the department collect. In August, Ricardo contacted Arredondo to say that he had relocated, was participating in drug counseling and maintaining sobriety. Arredondo asked Ricardo to provide proof of his compliance and gave Ricardo the department's fax number.

In our view, the department met its duty to provide Ricardo reasonable services. Arredondo made sure Ricardo knew what was required of him and referred him for the services. To the extent possible, he maintained contact with Ricardo in Mexico by correspondence and offered his assistance in arranging services for Ricardo in Mexico. Ricardo, however, did not ask for assistance, apparently relying on self-help to obtain drug counseling and random drug testing.

Ricardo nevertheless contends his services plan was unreasonable because it did not contemplate his deportation and identify services available to him in Mexico.

As we stated above, Ricardo assented to the content of his services plan and did not challenge it on appeal or attempt to modify it. Therefore he is now barred from arguing the reunification plan content is unreasonable. (*In re Julie M*. (1999) 69 Cal.App.4th 41, 47.) However, even if the issue were properly before us, we would conclude it lacked merit.

To support his contention, Ricardo cites this court to *In re Maria S.* (2000) 82 Cal.App.4th 1032 (*Maria S.*), a case in which the appellate court reversed a juvenile court order terminating a mother's parental rights. The appellate court concluded that the terms of the reunification plan and the mother's likely deportation deprived her of a reasonable opportunity to comply with the plan. Such is not the case here as we now explain.

In *Maria S.*, the appellant gave birth to a child while incarcerated on a drug possession charge. The department developed a reunification services plan for the appellant designed to begin upon her release from prison. The department was aware, however, that the appellant was subject to deportation upon her release. Upon release, the appellant was deported but maintained weekly contact with a social worker and made many unsuccessful efforts to reenter the country. Over the appellant's objection, the juvenile court terminated her parental rights. (*Maria S., supra,* 82 Cal.App.4th at pp. 1034-1038.) In reversing, the appellate court concluded there was no evidence the "appellant was afforded any reasonable opportunity to complete the contemplated case plan and reunify with Maria." (*Id.* at p. 1040.)

Here, there is no evidence anyone had foreknowledge of Ricardo's deportation. Further, unlike the appellant in *Maria S.*, Ricardo had a reasonable opportunity to complete his services plan. His services were immediately available to him upon referral. He was participating in them at the time of his deportation and continued to do so while in Mexico. Had Ricardo not been able to access any of his services, he could have informed Arredondo or his attorney and sought a modification of his case plan.

Ricardo further contends, citing *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996 (*Mark N.*), the department's efforts to assist him were not reasonable because Arredondo did not inquire as to what services were available to him in Mexico. *Mark N.* is distinguishable on several key points.

*Mark N.* arose on an extraordinary writ of mandate from the juvenile court's order terminating an incarcerated father's reunification services at an 18-month review hearing.

The father was incarcerated during the last 17 of the 18 month reunification period. (*Mark N.*, *supra*, 60 Cal.App.4th at p. 1000.) The appellate court concluded the evidence was insufficient to support a finding the department provided the father reasonable services and granted the petition. (*Id*. at pp. 1012, 1018-1019.) The court stated: "The department failed to contact the father during 13 of the 17 months of his incarceration, made "*no* effort to determine whether any services were available or could be provided," and instead concluded there was no need to "take any action to facilitate the reunification process." (*Id*. at p. 1013, original italics.)

Here, Arredondo maintained contact with Ricardo by correspondence and attempted telephone contact when Ricardo provided him a telephone number. He also informed Ricardo in the letters that he was available to help him with services and provided him a contact number. Arredondo did not inquire about the availability of services in Jalisco and Tijuana but then Ricardo did not appear to need help accessing services. Arredondo's regular communication with Ricardo and Ricardo's ability to access services distinguishes this case from *Mark N.*

That said, we are mindful that Mexico has a social services agency comparable to our child protective services. Had Arredondo contacted that agency, it is reasonable to assume that it would have acted as an arm of the department to provide Ricardo local assistance in accessing his services and reporting his compliance. However, Ricardo does not show how he would have had better access to services or made more progress had Arredondo contacted the agency. Further, it is possible that Ricardo was receiving the agency's assistance since he said he was going to contact the agency and he was receiving drug counseling and presumably drug testing as well. In any event, Ricardo failed to meet his burden of showing that the juvenile court erred in finding he was provided reasonable services. Consequently, we conclude substantial evidence supports the juvenile court's reasonable services finding.

9

Finally, Ricardo contends the children should have been placed with their paternal grandparents. However, he did not raise the issue before the juvenile court. Consequently, he forfeited any argument he may have with respect to relative placement and is precluded from raising it on this petition. (*In re Sabrina H*. (2007) 149 Cal.App.4th 1403, 1419.)

We find no error on this record.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.