Filed 2/24/15  Cooley Construction v. Matthews CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COOLEY CONSTRUCTION, INC., | G050422 |
| Plaintiff and Respondent, | (Super. Ct. No. CIVVS703800) |
| v. | O P I N I O N |
| PATRICK MATTHEWS et al., | |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of San Bernardino County, Marsha Slough, Judge.  Reversed and remanded.

Wagner Kirkman Blaine Klomparens & Youmans, Carl P. Blaine and Eric R. Garner for Defendants and Appellants.

Law Offices of Gregory J. Hout and Gregory J. Hout for Plaintiff and Respondent.

\*          \*          \*

Defendants Patrick Matthews and Home Builders, Inc., (collectively, Matthews) appeal from the trial court's order limiting them to one-third of their requested costs as the prevailing parties in a contract action and denying their motion for attorney fees. Plaintiff Cooley Construction, Inc., (Cooley) sued Matthews and other defendants for payment of the $400,000 remainder owed for paving and grading work Cooley completed on a residential subdivision project in Victorville. Cooley claimed Matthews was the alter ego or de facto partner and true contracting party behind the limited partnership, Victorville Wildbrook, LP, and CH Builders, Inc. (collectively, Wildbrook), with whom Cooley signed the paving and grading contract. Cooley sued both Matthews and Wildbrook for the money due on the contract, and Cooley prevailed against Wildbrook, but not Matthews.

The contract included an attorney fees provision for the prevailing party in payment disputes and, although Matthews did not sign the contract, Cooley had sought in its complaint an award of attorney fees against Matthews based on the contract, presumably on alter ego grounds. In a bench trial on the underlying payment dispute, the trial court rejected the notion Matthews "engaged in, induced, [or] led anyone . . . to believe that" Matthews was Wildwood's alter ego or the true party entering the contract with Cooley. The court therefore decided the lawsuit in Matthews' favor against Cooley, but rejected Matthews' motion for attorney fees, apparently on the basis that Matthews did not sign the contract. But case law establishes a nonsignatory sued on a contract in these circumstances is entitled to attorney fees under the contract, and we therefore reverse the judgment. The matter is remanded for the trial court to determine the amount of attorney fees and costs to which Matthews is entitled.

I

DISCUSSION

Because the parties' dispute centers on the attorney fee terms of the paving and grading contract, and neither party offered extrinsic evidence to aid in interpreting

2

the contract, we turn immediately to the contract itself, which we interpret de novo. (See *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1022 ["When, as in this case, no extrinsic evidence is introduced, the appellate court independently construes the contract"].) The common, ordinary meaning of the words used in a contract are controlling. (*Ibid.*) "The terms of a contract are determined by objective rather than by subjective criteria. The question is what the parties' objective manifestations of agreement or objective expressions of intent would lead a reasonable person to believe. [Citations.]" (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)

Here, the contract included two separate attorney fees provisions, one governing payment disputes (Paragraph 11) and the other governing "construction" disputes (§ 9(E)(1)(d)). The former provided for attorney fees in payment disputes, while the latter dictated the parties would bear their own attorney fees in resolving through mediation and binding arbitration disputes arising during construction. The mediation and arbitration provision covered only construction disputes.

As Matthews explains, the dual fee and dispute resolution provisions made sense in the context of a fast-moving construction project: "The construction dispute fee provision is part of a dispute resolution mechanism designed to quickly resolve construction issues or disputes occurring in the field: change order, scope of work, timing and materials issues. This mechanism first requires mediation, an informal negotiation and then arbitration. It is designed to be a quick, alternative means to resolving construction disputes so as not to disrupt or unnecessarily hold up a project. It is in construction disputes only that the parties clearly agreed to bear their own fees. Quite differently, in disputes concerning failure to pay, the parties plainly agreed . . . that the prevailing party shall be entitled to reasonable attorney fees."

Specifically, the payment provisions in the contract provided that "Progress payments shall be provided for all completed work" within "30 calendar days after invoice" (Paragraph 8), that "Final payment" was "due 60 days after completion" of

3

Cooley's work (Paragraph 10), and that "[i]f it becomes necessary to enforce provisions of this proposal *or terms of payment*, the prevailing party *shall recover reasonable attorney's fees* and all costs otherwise provided by law" (Paragraph 11). (Italics added.) The parties agreed this language carried over from Cooley's successful bid proposal and was incorporated into the paving and grading contract.

Unlike the attorney fee provision in Paragraph 11 for payment disputes, Section 9(E)(1)(d) specified the parties would bear their own fees in resolving construction disputes. Specifically, it provides that the parties "acknowledge and agree that all construction disputes regarding the Project shall be resolved in accordance with the procedures set forth below," consisting first of "Mediation" (§ 9(E)(1)(a)), then good faith consultation and negotiation, followed by binding arbitration (§ 9(E)(1)(b)). Subpart (d) of this section provides that in resolving the "construction disputes" according to the mediation and arbitration procedure outlined in § 9(E)(1), "each party shall be responsible for and shall pay *its own* attorney's fees and costs incurred in conjunction therewith *without* right of reimbursement from the other party." (Italics added.) Viewing Paragraph 11 in conjunction with Section 9(E)(1)(d), it is plain that the former covers payment disputes, for which attorney fees are authorized, and the latter governs construction disputes, in which each party bears their own attorney fees. We must give effect to this plain language. (See, e.g., Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part"].)

Noting that the payment provisions of the paving and grading contract first appeared in Cooley's successful bid proposal for the paving and grading project, Cooley contends the attorney fees provision in Paragraph 11 is limited to enforcing the bid proposal. This interpretation fails for two reasons. First, the bid proposal itself provided that its terms would be incorporated into the ensuing paving and grading project, including an identical attorney fees provision for enforcing payment terms. (See Bid Proposal, ¶¶ 2 & 15.) Second, Cooley does not identify any payments due solely under

4

the bid proposal, and therefore it would not make sense to limit the attorney fees provision to enforcing payments due solely under the bid proposal because there were none. For instance, nothing suggests Cooley was paid to submit its bid or to do any preliminary work in conjunction with submitting its bid. Rather, the only payments contemplated in both the bid proposal and the ensuing paving and grading contract were for actual paving and grading work Cooley completed. Therefore, the attorney fee provision in Paragraph 11 applied to enforcing payment for that work.

Indeed, that is exactly what Cooley claimed in its complaint. Cooley alleged in its complaint that "said written agreement [i.e., the paving and grading contract] provides for reasonable attorney's fees and court costs incurred in enforcing the terms and conditions thereof. Plaintiff [i.e., Cooley] should be allowed a reasonable sum as attorney's fees for the commencement and prosecution of this action." As we explain below, the expression that "what is good for the goose is good for the gander" applies to make contractual attorney fees reciprocal for prevailing defendants, including nonsignatories sued as alleged contracting parties.

Now on appeal, Cooley contends its lawsuit was not fundamentally to enforce payment, but rather to ascertain *what* amounts were due under the contract for its paving and grading work and *who* was responsible for making those payments. These very issues, however, are the gravamen of enforcing payment. Cooley also argues that attorney fee provisions in a contract must be strictly construed, but that principle cuts against Cooley because, as noted, we must give effect to all the contract terms, whereas Cooley's interpretation renders some terms surplusage.

While it is thus clear in examining the contract that it provides for attorney fees to enforce its payment terms, the trial court concluded that provision did not apply to nonsignatories. The court observed, "[W]hy should that [attorney fees provision] be applicable to an individual defendant, who is not an individual party to any of the contracts [i.e., the successful bid proposal and ensuing paving and grading contract]?"

5

Our Supreme Court has answered this query by holding that under the reciprocity requirement in Civil Code section 1717 governing contractual attorney fee provisions, a nonsignatory defendant is entitled to recover its fees when the signatory plaintiff would have been entitled to fees had it prevailed. (*Reynolds Metal Co. v. Alperson* (1975) 25 Cal.3d 124, 128-129.) As the Supreme Court later explained, "If section 1717 did not apply in this situation, the right to attorney fees would be effectively unilateral — regardless of the reciprocal wording of the attorney fee provision allowing attorney fees to the prevailing party — because only the party seeking to affirm and enforce the agreement could invoke its attorney fee provision. To ensure mutuality of remedy in this situation, it has been consistently held that when a party litigant prevails in an action on a contract by establishing that the contract is invalid [as to the defendant], inapplicable, unenforceable, or nonexistent, section 1717 permits that party's recovery of attorney fees whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 611.)

Cooley does not dispute that nonsignatories are entitled to fees in these circumstances, but argues instead that the contract did not provide for attorney fees. That position contradicts Cooley's claim in its complaint and, more to the point, fails under the express contract terms. Had Cooley prevailed in holding Matthews accountable for payment under the contract as Wildbrook's alter ego or otherwise as the true party with whom Cooley actually negotiated and formed the paving and grading contract, Cooley would have been entitled to attorney fees under the contract. Under Civil Code section 1717's reciprocity requirement, Matthews is therefore likewise entitled to attorney fees as the prevailing party.

Cooley contends Matthews is not entitled to attorney fees because the attorneys defending the action named an entity other than Matthews in their billing invoices. But whether Matthews incurred attorney fees defending against Cooley's lawsuit is a factual matter better left at this stage to the trier of fact on remand. Matthews

6

contends the trial court erred as a factual matter in approving only one-third of its costs request because Matthews actually incurred all of the litigation costs and attorney fees given the other defendant (Wildbrook) did not dispute it owed Cooley for the work it performed under the paving and grading contract  The same attorneys represented both Wildbrook and Matthews (and their alleged alter egos, CH Builders and Home Builders, respectively).  On remand, the attorneys' billing records and other evidence in support of their fee claim will shed light on what portion of the attorneys' work was allocated to each defendant, if it was severable.  Because the allocation of costs likely will largely track the percentage of attorney fees attributable to each defendant, we reverse the trial court's cost award for reconsideration in light of any evidence the parties present on the appropriate amount and allocation of attorney fees.

## II

## DISPOSITION

The trial court's attorney fees and costs order is reversed.  The trial court in proceedings on remand shall determine the amount of attorney fees and allocation of costs to which Matthews and Home Builders, Inc. are entitled as prevailing parties. Matthews and Home Builders, Inc. are similarly entitled to their costs and attorney fees on appeal in an amount to be determined by the trial court.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.

7