Filed 11/18/22  In re R.A. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re R.A., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>R.H., et al.,<br><br>    Defendants and Appellants. | G061210<br><br>(Super. Ct. No. 20DP1622)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Daphne Grace Sykes, Judge.  Affirmed.  Request for judicial notice.  Deny.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant R.H.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant C.A.

Leon J. Page, County Counsel, Karen L. Christensen and Deborah B. Morse, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

R.H. (Father) and C.A. (Mother) appeal from the juvenile court's order terminating their parental rights as to R.A. (minor) pursuant to Welfare and Institutions Code section 366.26 (.26 hearing). (All further statutory references are to the Welfare and Institutions Code unless otherwise specified.) Father and Mother contend they were not provided the statutorily required notice of the continued .26 hearing date. As discussed below, we conclude the notice requirements were met. Father also contends the juvenile court erred by finding inapplicable the parental-benefit exception because its analysis does not comport with the requirements of *In re Caden C*. (2021) 11 Cal.5th 614 (*Caden C*.). As explained below, we conclude the record supports the juvenile court's findings on the parental-benefit exception. Accordingly, we affirm.

FACTS

A. *Dependency Proceedings*

On December 26, 2020, senior social worker Mariela Flores filed a request for a protective custody warrant to remove the minor, who was born the day before via C-section, from Father and Mother because the child's physical environment posed a threat to her safety or health. The application alleged: (1) the parents remain in a relationship although they have a prior history of domestic violence, some of which occurred in the presence of siblings and half-siblings, and Father was in jail for recently violating a protective order; (2) the parents have unresolved substance abuse problems; (3) and the parents have a history of unstable housing. The juvenile court granted the request the same day. On December 28, 2020, the minor was placed with the maternal aunt, who also had custody of minor's siblings and half-siblings.[1]

---

[1] We deny SSA's request for judicial notice of the prior proceeding relating to the siblings, because those documents are not material to this appeal.

On December 29, 2020, SSA filed a dependency petition, alleging the parents failed to protect the minor and abused or neglected the minor's siblings. The juvenile court found SSA made a prima facie showing the minor came within section 300. The court granted Mother eight hours of supervised weekly visits. It ordered no visitation for Father while he was in custody, but later granted four hours of supervised visits weekly, when Father was out of custody. The court ordered SSA to provide reunification services. At the jurisdictional hearing, the juvenile court amended the petition and found the allegations of the amended petition relating to (b)(1) [failure to protect] and (j) [abuse of siblings], true by a preponderance of the evidence.

At the November 10, 2021 dispositional hearing, the juvenile court found that reasonable efforts were made to prevent or eliminate the need for removal of the child from her home, and that vesting custody with parents would be detrimental to the child and to vest custody with SSA would serve the child's best interests. The court set the .26 hearing date for March 8, 2022, in the presence of both parents who were represented by their respective counsel.

SSA served written notice of the March 8, 2022 hearing on Mother by first-class mail on December 23, 2021, and on Father by personal service on January 5, 2022. At the January 5, 2022, and January 28, 2022, Notice Review hearings, the parents' respective counsel objected to "notice," but the court found both parents had been served.[2]

At the March 8, 2022 .26 hearing, the court continued the matter to March 16, 2022, because as stated in the minute order, "a hearing is required and counsel is unavailable." There is no hearing transcript in the record. The minute order does not show that the parents were present. Although the unavailability of counsel was stated as a reason for continuing the hearing, the minute order indicates counsel for both parents

---

[2] Whether the parents were properly served notice of the March 8, 2022 hearing is not an issue in this appeal.

3

appeared at the March 8, 2022 hearing, and they objected to notice and the .26 hearing. The court ordered both counsel to provide notice to their respective clients of the next court date. On March 16, 2022, the parents did not appear for the .26 hearing. Counsel for each parent detailed their efforts to contact their respective clients as to the March 16, 2022 continued hearing date.

On March 16, 2022, the court proceeded with the .26 hearing, and read, considered and accepted into evidence SSA's report recommending the minor be placed for adoption. In that report, SSA stated the child had no medical or development issues. The child was engaged and comfortable with her caregivers, "go[ing] to them for all her needs." The report noted the caregivers wanted to adopt the minor, and were adopting the minor's siblings. With respect to father's visitation, the report noted Father was granted visits once he was released from jail. While the visits went well, their regularity was interrupted by Father's failure to comply with required procedures, such as confirming attendance before 10 a.m. on the day of the visits and complying with COVID preventative measures. Visitation also was interrupted twice because Father was arrested for violating the protective order and incarcerated.

The court then found the parents received proper notice of the March 16, 2022 hearing. It terminated parental rights, found adoption was appropriate, and found none of the exceptions to adoption applied.

DISCUSSION

A. *Notice of Continued .26 Hearing*

Father and Mother contend the juvenile court denied them due process when it terminated their parental rights without notice of the continued .26 hearing date. We are not persuaded.

4

Section 294, subdivision (a), provides that notice of a section 366.26 hearing must be provided to, among others, the mother, the father, and all counsel of record. Section 294, subdivision (f), provides that notice to the parents may be given as follows: "If the parent is present at the hearing at which the court schedules a hearing pursuant to Section 366.26, the court shall advise the parent of the date, time, and place of the proceedings, their right to counsel, the nature of the proceedings, and the requirement that at the proceedings the court shall select and implement a plan of adoption, legal guardianship, placement with a fit and willing relative, or another planned permanent living arrangement, as appropriate, for the child. The court shall direct the parent to appear for the proceedings and then direct that the parent be notified thereafter only by first-class mail to the parent's usual place of residence or business, or by electronic service pursuant to Section 212.5." (§ 294, subd. (f)(1).)

Section 294 further provides: "Regardless of the type of notice required, or the manner in which it is served, once the court has made the initial finding that notice has properly been given to the parent, or to any person entitled to receive notice pursuant to this section, subsequent notice for any continuation of a Section 366.26 hearing may be by first-class mail to any last known address, by an order made pursuant to Section 296, by electronic service pursuant to Section 212.5, or *by any other means that the court determines is reasonably calculated, under any circumstance, to provide notice of the continued hearing*." (§ 294, subd. (d), italics added.)

Finally, section 294, subdivision (j), provides: "Notwithstanding subdivision (a), if the attorney of record is present at the time the court schedules a hearing pursuant to Section 366.26, no further notice is required, except as required by subparagraph (A) of paragraph (7) of subdivision (f)." Section 294, subdivision (f)(7)(A), provides for service on the attorney of record or publication where the parent cannot be located or served by first-class mail or personal service despite due diligence.

5

Here, substantial evidence supports a finding that counsel for Mother and Father were present at the March 8, 2022 hearing. The minute order for that hearing reflects that attorneys for both Father and Mother made an appearance and objected to notice and the setting of the .26 hearing. Although the minute order states the matter was continued because a hearing was required and counsel was unavailable, the most reasonable inference is that counsel was present but was unable to proceed thus necessitating a continuance. Because the attorneys of record for Mother and Father were present when the court continued the hearing to March 16, 2022, no further notice was required under section 294, subdivision (j). The exception provided by section 294, subdivision (f)(7)(A), does not apply because parents were previously served by first-class mail and/or personal service.

Moreover, even though notice to the parents was not required, the juvenile court nevertheless provided notice to the parents of the March 16, 2022 hearing. That notice complied with the requirements of section 294, subdivision (d). There is no dispute the juvenile court made "the initial finding that notice had properly been given to the parent[s]." (§ 294, subd. (d).) The record shows Father and Mother were present in court when the court set the initial .26 hearing date, the court provided the required advisements, and SSA served written notice of the initial hearing date on the parents. The record also shows the parents were not present for the initial .26 hearing, and the court ordered parents' counsel to provide notice of the continued hearing scheduled for March 16, 2022, to their respective clients. Father and Mother have not shown how ordering notice to them through their respective trial counsel was not "reasonably calculated, under any circumstance, to provide notice of the continued hearing." (§ 294, subd. (d).) We note that trial counsel who represented the parents in prior proceedings, including the January 2022 Notice Review hearings and the initial .26 hearing on March 8, 2022 were the same. There was no reason for the juvenile court to believe counsel would not diligently notify or attempt to notify the parents of the continued date. Indeed,

6

at the March 16, 2022 hearing, counsel detailed their multiple attempts to contact their respective clients to inform them of the new date. Thus, the court met the requirements of section 294, subdivision (d), because it provided notice to the parents by means that "is reasonably calculated, under any circumstance, to provide notice of the continued hearing." (§ 294, subd. (d).) In sum, the record shows the court complied with statutorily-mandated notice requirements relating to the .26 hearing.

B. *Parental-Benefit Exception*

The parental-benefit exception permits the selection of another permanent plan if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) To show the exception applies, the parent bears the burden of establishing three elements: (1) regular visitation and contact with the child, taking into account the extent of visitation permitted; (2) the existence of a substantial, positive, emotional attachment between the child and the parent -- the kind of attachment implying that the child would benefit from continuing the relationship; and (3) that terminating the parent-child relationship would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home. (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) In evaluating whether the exception applies, courts should look to several factors, including the age of the child, the amount of time he spent in his parent's custody, the quality of interaction between parent and child, and the child's particular needs. (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 576.) If the parent establishes all three elements, the exception applies, and the court should select a permanent plan other than adoption. (*Caden C.*, *supra*, at pp. 636-637.)

The juvenile court's findings on the first two elements—regular visitation and whether the child would benefit from continuing the relationship—are reviewed for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-640.) Courts review the third element using a hybrid standard: reviewing factual determinations for substantial

evidence and the weighing of the relative harms and benefits of terminating parental rights for an abuse of discretion. (*Ibid.*) But where, as here, "the issue on appeal turns on a failure of proof at trial," "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

Father contends the juvenile court's ruling on the parental-benefit exception did not comport with the requirements of *Caden C.* because it did not perform a specific analysis of the three elements. We disagree. At the outset, we note Father has the burden to prove all three elements, and failure to prove any one element is sufficient to support the juvenile court's ruling here. As to the first element, we note the juvenile court did not make an express finding whether Father maintained regular visitation with the minor. The court, however, is not required to make express findings when it concludes the parental-benefit exception does not apply. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156 [the juvenile court is not required to recite specific findings when it concludes that terminating parental rights would not be detrimental to the child].) Where, as here, the record does not clearly establish the court resolved the issue of visitation in Father's favor, we must construe the court's ruling on "the visitation element in a manner that supports its order terminating father's parental rights." (*In re Eli B.* (2022) 73 Cal.App.5th 1061, 1069; see also *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631 [the trial court's ruling is presumed correct, and ambiguities are resolved in favor of affirmance].) Thus, we presume the court found Father did not meet the regular visitation element.

Father has not met his heavy burden on appeal to show the juvenile court's finding on the first element was erroneous. The record shows Father missed several visits because he failed to comply with visitation protocols. More important, the regularity of the visits was interrupted on two separate occasions due to Father's incarceration for his intentional violations of the protective order. Given the minor's young age, it is not unreasonable to infer that missing the visits interfered with the minor's ability to form a significant, positive, emotional attachment to Father. (See *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1105 ["[S]ubstantial evidence standard of review requires us to resolve all conflicts and draw all reasonable inferences from the evidence in favor of the trial court's order"].) Thus, the undisputed evidence is insufficient to compel a finding as a matter of law that Father had enough regular visitation and contact with the child to fulfill the first element.

Nor has Father shown the juvenile court erred in ruling against him on the other two elements. To prove the second element, the parent must show that "the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) In assessing whether the child would benefit from continuing their relationship with the parent, "the focus is the child. And the relationship may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' [Citation.]" (*Id.* at p. 632.) Here, the undisputed evidence shows Father was not present at the minor's birth, and the minor was placed with the prospective adoptive parents two days after her birth, where she remains to this day. While the visits were generally positive, there is no evidence the child formed a substantial, positive emotional attachment to Father. In sum, the undisputed evidence is insufficient to compel a finding as a matter of law that the second element was met.

For the third element, the parent must show that terminating the parent-child attachment "would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) In evaluating this element, the court "decides whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.'" (*Id*. at pp. 633-634.) "When the relationship with a parent is so important to the child that the security and stability of a new home wouldn't outweigh its loss, termination would be 'detrimental to the child *due to*' the child's beneficial relationship with a parent." (*Ibid*.) "In many cases, 'the strength and quality of the natural parent/child relationship' will substantially determine how detrimental it would be to lose that relationship, which must be weighed against the benefits of a new adoptive home." (*Id*. at p. 634.) Here, Father failed to show the juvenile court abused its discretion in terminating parental rights. (See *id.* at p. 640 ["the ultimate decision — whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent — is discretionary and properly reviewed for abuse of discretion"].) As noted above, the minor was removed from the parents' custody when she was only a few days old, and contact with Father was sporadic. As a result the minor never had a chance to develop a deep bond with Father necessary to invoke the parental-benefit exception. Also, nothing in the record convincingly shows the minor formed such a bond with Father in spite of the irregular visitation. In sum, the record fails to show the minor's bond with Father was so strong that the interest in keeping it intact outweighs the benefits she would obtain from adoption.

DISPOSITION

The juvenile court's order terminating the parental rights of Father and Mother is affirmed.



MARKS, J.*

WE CONCUR:


MOORE, ACTING P. J.


MOTOIKE, J.


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.