Filed 4/6/21  Paquette v. Paquette CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LINDA ELIANA PAQUETTE, | B304370 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC694182) |
| v. | |
| JEROME VICTOR PAQUETTE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge.  Affirmed.

Linda Eliana Paquette, in pro. per., for Plaintiff and Appellant.

Gusdorff Law and Janet Gusdorff; Branson & Branson and Uzzell S. Branson for Defendant and Respondent.

Linda Eliana Paquette (Linda) appeals from a judgment entered after a bench trial on her breach of oral contract claim against her brother, Jerome Victor Paquette (Jerome).[1]  After an approximately three-hour trial, the trial court determined that the two-year statute of limitations on oral contract claims found in Code of Civil Procedure section 339 (section 339) barred Linda's claim against Jerome.  On appeal, Linda argues that the trial court erred in finding her claim time barred, and erred in declining to find the doctrine of equitable estoppel applicable to estop Jerome from asserting the statute of limitations defense. We find that the evidence supports the judgment, therefore we affirm.

## BACKGROUND

Between 2005 and 2008, Linda helped Jerome with various expenses, including expenses related to dental work and divorce proceedings.  During this time, Jerome was doing work on Linda's home, among other things.  Linda testified that she helped Jerome with his expenses in reliance on his promise to pay her back at his death through his will.  Linda alleged that the medical expenses, legal expenses for Jerome's divorce, and various other amounts she advanced him amounted to $61,057.30.[2]

Linda typed a will that Jerome signed on April 28, 2005. At the time, Jerome was still married to his now ex-wife.  Linda told Jerome to sign the will to protect his assets from his ex-wife

---

[1]  Because the parties share the same last name, we refer to them by their first names for clarity.

[2]  At trial, the parties stipulated that the amount of Linda's claim was $49,771.64.

in case anything happened. The will ensured that Jerome's assets would go back to the family. The will provided that upon Jerome's death, his assets would go to his parents, and if they predeceased him, to Linda. At the time, Jerome did not know if Linda had a will, nor did Linda promise to sign a will if Jerome signed the will she drafted. Linda did not promise to make Jerome the beneficiary of her will.

At trial, Jerome and Linda offered conflicting evidence as to whether they entered into an oral agreement for Jerome to repay Linda for the money she spent on his behalf. Linda testified that there was "always" an "understanding and agreement that I would be paid back somehow." Linda insisted that during the course of his divorce, Jerome represented to her that she would be compensated, and that it was a "continuing conversation" between the two of them since that time. Jerome, on the other hand, denied ever having entered into an agreement to repay Linda. He said the dental work was a gift, since their parents had never paid for him to have dental work. He acknowledged that Linda helped him with his divorce, but insisted that he never promised to pay her back. Jerome testified that Linda told him she would "take care of all of it," and never mentioned anything about paying her back. Jerome was never aware of the amounts that Linda was paying, and never saw any invoices. Jerome denied agreeing to pay Linda back for any of the other expenses she claimed to have advanced for him.

Jerome testified that during the 2013-2014 period, Linda asked him three times to sign estate planning documents naming her as beneficiary. Jerome declined to sign the documents.

With a letter dated April 26, 2014, Linda enclosed a joint will designed to protect her and Jerome in the event of either's

death.  The letter read, in pertinent part:  "Enclosed is a joint will wherein we devise our real property to each other.  [¶]  You have until May 10, 2014, to sign the joint will with me.  I will otherwise assume it is your intent to disinherit me and give my real property to others."

Linda testified that she and Jerome had an oral agreement to give each other their estates, and admitted that her demands to her brother dated from 2014.  However, Linda asserted that although he did not comply with her 2014 demand, Jerome "kept continually saying that no, I'll do it.  I'll do it."  Linda claimed that she relied on her brother's assurances, and was unaware of her brother's breach until she received a letter from his attorney dated December 20, 2017, which stated that Jerome was not obligated to leave his estate to Linda.

## PROCEDURAL HISTORY

On February 15, 2018, Linda brought this lawsuit against Jerome.  She alleged breach of an oral contract that the two had allegedly made in 2005.  Linda alleged that the breach arose in 2017 when she received the letter from Jerome's attorney stating "whether he decides to include you in his estate plan is his decision."

A bench trial went forward on October 16, 2019.  After Linda's case in chief, Jerome moved for judgment for the defense on statute of limitations grounds.  After hearing the arguments of the parties, the court found that the statute of limitations applied to bar Linda's claims and rendered judgment in favor of Jerome.

On December 24, 2019, the court filed a statement of decision.  The court noted that Linda brought a single cause of action for breach of oral contract, and that on April 26, 2014, Linda made a written demand that Jerome sign, on or before

4

May 30, 2014, a joint will she had prepared pursuant to the oral agreement. Jerome did not sign the will, and Linda did not file her lawsuit until February 15, 2018, more than two years later. Pursuant to section 339, Linda's claim was therefore barred.

On February 18, 2020, Linda filed her notice of appeal from the judgment.

## DISCUSSION

### I. Standard of review

Linda presents two issues on appeal. First, she argues that the trial court erroneously ignored her evidence that December 20, 2017 was the first date she learned that Jerome would not honor his oral promise to pay her back at his death through his will. Second, she argues that the trial court erred in declining to apply the doctrine of equitable estoppel to extend the two-year statute of limitations.

Both of the issues set forth above were decided by the trial court after hearing conflicting evidence regarding the events leading up to this lawsuit. When a trial court resolves disputed facts concerning the application of the statute of limitations, the standard of review is substantial evidence. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632; *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 ["resolution of the statute of limitations is normally a question of fact"].) Under this standard, "[i]f the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed." (*Winograd v. American Broadcasting Co., supra,* at p. 632.) The trial court's decision as to whether equitable estoppel applies is also a factual question. (*Cuadros v. Superior Court* (1992) 6 Cal.App.4th 671, 675.) "The issue is whether, viewing the evidence and all the inferences therefrom in the light most

5

favorable to the defendants, there was substantial evidence upon which the court could reasonably have found as it did." (*Ibid.*)

"[W]e defer to the trier of fact on issues of credibility." (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.) """"[I]t is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.""""" (*Ibid.*)

## II. Substantial evidence supported the decision that the statute of limitations barred Linda's claim

There is no dispute that the applicable statute of limitations is two years pursuant to section 339. After hearing testimony and taking evidence from the parties, the trial court made the factual determination that Linda knew of her claim for breach of oral contract more than two years prior to the date she filed her complaint. Specifically, in a letter dated April 26, 2014, Linda demanded that Jerome sign, on or before May 30, 2014, a joint will that she had prepared pursuant to the alleged agreement. The letter specified that if Jerome did not sign the will, Linda would presume he had breached the alleged agreement. Jerome did not sign the will. However, Linda did not file her complaint until February 15, 2018, more than two years later.

Linda asks that we revisit the facts and interpret them favorably to her. She states that she and Jerome entered into an oral agreement in 2005, whereby in exchange for Linda providing health care costs and legal fees, among other things, Jerome would leave Linda his entire estate. Although she admits sending Jerome a letter and joint will on April 26, 2014, and admits that Jerome did not sign that will, she insists that he provided continued assurances that he would pay her back

6

through his will.  Linda asserts that she believed these continued assurances.  By letter dated December 20, 2017, Jerome's attorney made it clear that Jerome had no obligation to pay her back though his will.  Linda claims that this was the first time that she learned of her brother's breach.

There was contrary evidence presented to the court at trial. Jerome testified that despite Linda's demands that he sign joint wills in 2013 and 2014, he refused to do so.  Linda's ultimatum in April 2014 specified that if Jerome did not sign and return the joint will by May 30, 2014, she would assume he was refusing to include her in his will.  Jerome never signed the will.  In contrast to Linda's evidence, Jerome testified that he never said that he would pay her back any of the money she loaned him in the past. Instead, Linda represented that she would take care of these things for him, and never asked that he promise to pay her back.

We must defer to the trial court's resolution of these disputed facts regarding Linda's claims, and view the conflicting evidence in the light most favorable to the respondent. (*Winograd v. American Broadcasting Co., supra,* 68 Cal.App.4th at p. 632; *Cuadros v. Superior Court, supra,* 6 Cal.App.4th at p. 675.)  Jerome's testimony constituted substantial evidence from which the trial court could have reasonably found that the statute of limitations began to run as early as 2014.  To the extent that Linda provided conflicting testimony, we must assume that the trial court made a credibility determination that Jerome presented more credible evidence.  We must defer to the trier of fact on the issue of credibility.  (*Lenk v. Total-Western, Inc., supra,* 89 Cal.App.4th at p. 968.)

Substantial evidence supports the trial court's determination that the statute of limitations on Linda's breach of

oral contract claim began to run in 2014. Thus, her complaint, filed in 2018, was barred by the two-year statute of limitations found in section 339.

## III. Substantial evidence supported the determination that the doctrine of equitable estoppel was not applicable

Linda next argues that even if the statute of limitations started to run in 2014, the trial court should have found the doctrine of equitable estoppel applicable to extend the time for filing her complaint. Linda claims that the trial court ignored the evidence that in spite of refusing to sign the joint will, Jerome provided continued assurances that his estate would repay her. Linda insists that it was not until she received the December 20, 2017 letter from Jerome's attorney that she first learned that Jerome had no intention of honoring their agreement.

Again, Linda asks us to revisit the evidence and interpret it favorably to her. Conflicting evidence in the record, which the trial court was permitted to believe, showed that Jerome never promised to repay Linda for any of the money that she expended on his behalf. The trial court resolved this conflicting evidence against Linda, apparently finding unpersuasive her assertion that she relied on repeated assurances from Jerome. Because substantial evidence in the record supports the trial court's factual determination regarding the applicability of equitable estoppel, we defer to this factual finding. (*Cuadros v. Superior Court, supra,* 6 Cal.App.4th at p 675.)

The cases cited by Linda are distinguishable. Linda first cites *Bacon v. Kessel* (1939) 31 Cal.App.2d 245 (*Bacon*). *Bacon* presents an example of a case where equitable estoppel was appropriate. However, the case is distinguishable from this matter. In *Bacon*, a brother and sister were beneficiaries of their

8

father's will.  The brother intended to contest the will unless some arrangement was made whereby he received his proper share of the estate.  The sister assured him that if he did not contest the will, she would provide him with a portion of her share.  When the estate was distributed, she repudiated her agreement and the brother commenced his lawsuit.  The key difference is that the court resolved the "direct and hopeless[ly]" conflicting evidence in favor of the brother.  (*Id.* at p. 246.)  The court found that the "'defendant promised and assured plaintiff that if he would not contest the will that she would pay him one-eighth of what she would receive from the estate or its equivalent value; that plaintiff relied implicitly in defendant and trusted her completely and fully believed that she would keep her word in said matters and in consideration thereof and solely by reason thereof plaintiff did forbear filing a contest of said Will and probate proceedings.'"  (*Id.* at p. 248.)  Under these factual circumstances, as found by the lower court, the court of appeal determined that the doctrine of equitable estoppel should apply.  We must, like the *Bacon* court, give deference to the trial court's findings.  However, in this case, the trial court determined that Jerome did not provide any such assurances and Linda was not wrongfully persuaded to forbear from pursuing her claim.

*Bautello v. Bautello* (1998) 64 Cal.App.4th 842 (*Bautello*) also does not help Linda's position.  In *Bautello*, the trial court sustained a demurrer on statute of limitations grounds on a son's lawsuit against his parents' trust for failure to convey a property as promised.  The matter was reversed because the son "alleged sufficient facts to come within the doctrine" of equitable estoppel.  (*Id.* at p. 848.)  Here, Linda was permitted to move beyond the demurrer stage of the proceedings to a trial on the merits of her

9

claims. The trial court did not credit her evidence that Jerome provided her with assurances of payment such that the doctrine of equitable estoppel should apply. Because substantial evidence in the record supported the trial court's decision, we do not revisit it.[3]

## IV. Linda's argument that she was not permitted to fully present her case was forfeited

After the trial court announced its judgment, and directed Jerome's counsel to prepare a judgment for the defense, Linda asserted that she would like a statement of decision and also "would like for us to put together the dollar amounts" that she and counsel had agreed upon. Jerome's counsel objected that it was inappropriate to adduce more evidence, but that he was happy to stipulate "as to the numbers we agreed were contained in her demand." At that time, Linda asked that it be noted for the record that she was not permitted to give such additional testimony.

The trial court inquired, "What testimony are you talking about?" Linda responded, "Everything that you just denied, your honor." The trial court noted that testimony relevant to the statute of limitations was all that was necessary.

On this record, Linda argues that she was denied the right to fully present her case. Linda cites one case, *Jorgensen v. Jorgensen* (1948) 32 Cal.2d 13, 18, for the proposition that "a

---

[3]     *Juran v. Epstein* (1994) 23 Cal.App.4th 882, is irrelevant. The issue was whether an oral contract to make a will was enforceable despite a former Probate Code section placing strict limits on such contracts. The *Juran* court found that in enacting the statute, the Legislature did not intend to abrogate equitable principles such as equitable estoppel. (*Id.* at p. 896.)

party shall not be deprived of a fair adversary proceeding in which fully to present his case." Linda presents no other authority, or reasoned argument, as to why she should have been permitted to present the additional testimony. When a party asserts a point but fails to support it with reasoned argument and citations to authority, we may treat the point as forfeited. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Further, Linda makes no effort to show how her additional testimony or evidence would have changed the outcome of this case. "A judgment may not be reversed on appeal . . . unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.)." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.) Generally, errors do not require reversal "unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached." (*Ibid.*)

Linda has failed to present adequate authority and reasoned argument as to why she should have been permitted to present additional evidence after judgment had been rendered at trial. Further, Linda has failed to show that any purported error was prejudicial. We deem the issue forfeited and decline to address it further.

## V.  Jerome's motion for sanctions

Jerome has filed a motion for appellate sanctions pursuant to Code of Civil Procedure section 907 (section 907) and Rule 8.276, subdivision (e) of the California Rules of Court. Section 907 permits a reviewing court to add damages to the costs on appeal when it appears that the appeal was "frivolous or taken solely for delay."

11

The standards for determining frivolous appeals fall into two general categories, subjective and objective. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 (*Flaherty*).) "The subjective standard looks to the motives of the appellant and his or her counsel." (*Ibid.*) "The objective standard looks at the merits of the appeal from a reasonable person's perspective." (*Ibid.*) "The two standards are often used together, with one providing evidence of the other." (*Ibid.*) However, both tests are relevant to the determination that an appeal is frivolous. (*Id.* at p. 650.)

Jerome argues that Linda's appeal meets the definition of frivolous under both standards. He argues generally that Linda skewed the facts in her favor, ignored the standard of review, and therefore we may infer that the appeal was taken solely to drain Jerome's resources.

However, the *Flaherty* court noted that counsel and parties have "a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal." (*Flaherty, supra,* 31 Cal.3d at p. 650.) "An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*Ibid.*) The borderline between a frivolous appeal and one which simply has no merit is vague, thus "the punishment should be used most sparingly to deter only the most egregious conduct." (*Id.* at p. 651.) As Linda's appeal does not demonstrate egregious conduct, we therefore deny Jerome's motion for sanctions.

# DISPOSITION

The judgment is affirmed.  Appellant shall pay the costs of appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:

_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT