Filed 9/7/22  In re N.S. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.S., a Person Coming Under the Juvenile Court Law. | B315393 (Los Angeles County Super. Ct. No. 19CCJP00861) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. NATALIE S., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Juvenile Court Referee.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Natalie S. (mother) appeals from an order terminating her parental rights to her son, N.S. (born February 2019).  Mother challenges the juvenile court's ruling denying her petition filed pursuant to Welfare and Institutions Code section 388,[1] which sought reinstatement of family reunification services in order to avoid termination of parental rights.  Mother also challenges the subsequent order terminating her parental rights.  We find no error and affirm the juvenile court's orders.

### FACTUAL AND PROCEDURAL BACKGROUND

**Initial investigation and detention**

In February 2019, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging that mother tested positive for amphetamines at the time of N.S.'s birth.  N.S. also tested positive for amphetamines at birth.  Mother admitted to using street drugs since she was 18 years old.  Mother previously completed a drug treatment program but relapsed several times.  Mother informed the reporting party that she was on amphetamines until she found out that she was pregnant in her second trimester and then began using once a day.  Mother admitted having untreated mental health issues

---

[1]    All further statutory references are to the Welfare and Institutions Code.

2

and no psychiatrist.  Mother had no permanent address but occasionally resided with maternal great-grandfather.

In March 2017, the juvenile court sustained a petition on behalf of N.S.'s half sibling, Ni.S., based on mother's substance abuse and mental health issues.  Mother had been living out of a car and exposed the child to methamphetamine.  Mother would get high in front of the child.  The social worker for Ni.S. reported that mother did not complete court-ordered services and refused to submit to random or on-demand drug tests.  In February 2018, the juvenile court terminated mother's parental rights over Ni.S. The half sibling's prospective adoptive parents were willing to care for newborn N.S.

In an interview with the social worker, mother disclosed she had been using methamphetamines since the age of 17[2] and had previously enrolled in treatment but could not recall the year she enrolled or for how long she had participated in services. Mother provided different answers regarding her drug usage. Initially she stated that she had last used a week earlier, then stated it was only on the weekends, then stated it was months from her last use.  After her first child was removed, mother became more dependent on drugs, having no reason to stay sober.

Mother was diagnosed with bipolar disorder at the age of seven.  She took medication and participated in therapy from the age of seven to the age of 18.  When mother got tired of medication and therapy, she stopped both.

Two days after his birth, N.S. was placed in the home of his half sibling and caretakers.  On February 7, 2019, DCFS filed a

---

[2]     Mother was 25 years old at the time the proceedings commenced.

detained petition on behalf of N.S. alleging violations of section 300, subdivisions (b)(1) and (j).  At the February 8, 2019 detention hearing, the court found there was a prima facie case that N.S. was described by section 300 and ordered him detained. The court ordered DCFS to provide mother with referrals for services and granted her monitored visitation.

**Adjudication and disposition**

On March 21, 2019, DCFS filed a first amended petition alleging that father had a criminal history for substance abuse related offenses, had a history of substance abuse and was a current user of methamphetamines.[3]  The juvenile court received the first amended petition and dismissed the original petition.

In a jurisdiction/disposition report filed in March 2019, DCFS reported that mother failed to visit the child during his first month of life.  DCFS asked that mother not be granted reunification services, as the juvenile court had ordered termination of reunification services and parental rights for Ni.S. Mother had not made a reasonable effort to treat the problems that led to the removal of the half sibling.  Thus, pursuant to section 361.5, subdivision (b)(10), (11) and (13), the juvenile court was not required to provide reunification services.

At the April 17, 2019 adjudication hearing, the juvenile court sustained the first amended petition as pled and found that N.S. was described by section 300, subdivisions (b) and (j).  The court set the disposition hearing for contest regarding whether mother was entitled to reunification services.  The court granted mother monitored visitation twice a week for two hours per visit

---

[3]     Father was not involved in the dependency proceedings and is not a party to this appeal.

4

and encouraged her to make progress at the drug treatment program in which she had enrolled.

In February 2019, mother had enrolled in a residential drug treatment program. She completed several components of the program before testing positive for methamphetamine and attempting to bring drugs into the facility in May 2019. Mother was discharged from the drug program a couple of weeks short of completing treatment services.

At the May 30, 2019 contested disposition hearing, the juvenile court declared N.S. a dependent of the court, removed the child from parental care, denied the parents reunification services, and scheduled a selection and implementation hearing pursuant to section 366.26. Mother was granted monitored visitation with N.S.

Thereafter, the proceedings were continued numerous times due to the COVID-19 pandemic and notice issues for the alleged father, who was incarcerated.

**Permanency planning reports**

In September 2019, DCFS reported that the half sibling's caretakers wanted to adopt N.S., who was thriving in their home and was closely bonded to the caretakers and his half sibling. N.S. received regional center services to address developmental deficiencies, including cognitive and social-emotional skills.

Mother did not visit N.S. regularly. After failing to visit N.S. for the first month of his life, mother missed several visits, appeared exhausted when she did visit, and left a visit early to run errands. Mother visited N.S. twice in March 2019, twice in April 2019, once in May 2019, and three times in June 2019. Mother did not visit N.S. at all in July or August 2019. The child did not recognize mother during the infrequent visits. Mother

appeared frustrated by N.S. and displayed "very minimal care" toward the child. During one visit, mother appeared to be under the influence of drugs and fell asleep while holding the child. In January 2020, DCFS reported that mother had not visited N.S. in more than four months and last saw the child in September 2019.

As N.S. was thriving in the care of his caretakers, DCFS recommended adoption. The caregivers were approved to adopt N.S. In October 2020, DCFS reported that N.S. had a strong bond with his half sibling and the caretakers, who were the only parents the child had ever known. Mother had not visited N.S. in more than one year.

**Mother's arrest, birth of third child, and section 388 petitions**

In April 2020, mother was arrested for possession and purchase of narcotics.

In November 2020, mother tested positive for methamphetamines during a prenatal visit.

In December 2020, mother enrolled in a substance abuse program.

In January 2021, mother gave birth to her third child. DCFS filed a section 300 petition, and the juvenile court released the newborn to mother's care with several conditions in place, including the condition that mother continue in her substance abuse treatment program.

In February 2021, DCFS noted that mother had not visited two-year-old N.S. since September 2019. N.S. remained well bonded to his caretakers and half sibling. In February 2021, mother filed a petition pursuant to section 388 requesting custody of N.S. or reunification services. Mother provided a letter from her counselor, who stated that mother was admitted into

Stepping Stones residential treatment facility on December 4, 2020, and had been in the facility 24 hours a day, seven days a week. Stepping Stones provided a sober living environment for women and their children. Mother had been attending group meetings, met with her counselor weekly, was required to randomly drug test and had tested negative. Mother maintained attendance in groups and provided care to her newborn baby. The juvenile court declined to set mother's section 388 petition for hearing.

On March 3, 2021, mother graduated from Stepping Stones and transitioned to Welcome Home sober living in Pomona. Mother received certificates in domestic violence and parenting and mother's counselor stated that mother actively participated in groups. Mother provided 34 random drug tests and all results were negative.

On March 10, 2021, mother entered outpatient substance abuse treatment at Prototypes women's center. The center offered substance abuse rehabilitation for women with children and offered individual counseling, group therapy and classes. All clients were randomly drug tested and participated in Narcotics Anonymous (NA) and Alcoholics Anonymous (AA) groups.

In April 2021, after 19 months of failing to visit N.S., mother resumed monitored visits with the child. Mother had Zoom visits with N.S. as well as monitored in-person visits for two hours every Sunday. N.S. did not recognize mother, but was friendly with her. Mother was overwhelmed and required assistance as she tried to care for both her newborn and N.S. Mother missed a scheduled visit on May 2, 2021, as she had recently moved.

In April 2021, mother filed a second petition pursuant to section 388 requesting custody of N.S. or reunification services. The juvenile court again declined to set mother's section 388 petition for hearing.

In August 2021, DCFS filed a report indicating that N.S. was thriving in the care of his caretakers, whom he identified as his parents, and enjoyed living with his half sibling. DCFS pointed out that mother did not show any interest in N.S.'s life until he turned two years old. Thereafter, mother was inconsistent with visits and unable to safely care for N.S. during the short, weekly monitored visits. N.S. did not recognize mother and thought she was a friend of his caretakers. Mother visited the child four times in April 2021; twice in May 2021; twice in June 2021; three times in July 2021; and once in August 2021.

In August 2021, mother filed her third section 388 petition, requesting custody of N.S. or reunification services. Mother argued that she had completed her case plan objectives and had custody of her newborn. Mother argued that it was not in the best interest of N.S. to be separated from his mother and little sister.

The juvenile court scheduled mother's section 388 petition for a hearing the same day as the section 366.26 selection and implementation hearing.

DCFS recommended that the juvenile court deny mother's section 388 petition. Mother lived in an outpatient drug program with her youngest child. Mother continued participating in services but missed a drug test in May 2021, tested positive for codeine in August 2021, and failed to submit to a drug test in

August 2021.[4]  DCFS noted mother's poor attendance at visits with N.S., including cancellation of all her in-person visits for September 2021.[5]  N.S. did not recognize mother as a parent, and mother continued to be overwhelmed in caring for the child during visits.  During a recent visit with mother, N.S. stated, "I wanna go home now," on three separate occasions.  The child also expressed that he did not want to visit mother.  In contrast, the child had a strong bond with his caretakers and his half sibling, with whom N.S. lived since he was two days old.

**Denial of section 388 petition and termination of parental rights**

The section 388 hearing and the section 366.26 selection and implementation hearing took place on September 27, 2021.

Mother was present and testified that she had been sober since December 4, 2020, and that she was on step 5 of a 12-step program.  Mother was not under the care of a psychiatrist or

---

[4]  Mother reported that she had two teeth extracted and was prescribed Tylenol with codeine in it.  She was unaware of the codeine until the social worker brought the positive drug test to her attention.  Mother immediately stopped taking the medication.  She reported that she did not abuse it, and all of her medications were administered by Prototypes staff.

[5]  Mother reported that the visits were cancelled because mother and her daughter were sick.  When they recovered, mother had a Zoom visit with N.S., but N.S. did not want to talk to her and covered his face.  At trial, mother testified that she missed in-person visits with N.S. during the last four weeks because her daughter was sick with COVID-19.  However the record does not reveal a diagnosis of COVID-19.  Instead, the child had "Acute bronchitis/pneumonia unspecified organism." COVID-19 test results for both mother and child were negative.

taking prescribed medications to address her mental health. Mother testified to her relationship with N.S.

DCFS argued that mother had not met her burden of showing either changed circumstances or that granting the section 388 petition would be in the best interests of N.S. The juvenile court agreed, finding mother abused drugs for many years and only recently took her sobriety seriously. The court further noted that N.S. lived with the caretakers since birth and it would not be in the child's best interests to provide mother with reunification services for a chance to reunify at some unknown date in the future. The court denied mother's section 388 petition and proceeded to the section 366.26 hearing.

Turning to the section 366.26 hearing, the juvenile court found that no exception to termination of parental rights applied, and terminated mother's parental rights. N.S.'s caretakers were designated as N.S.'s prospective adoptive parents and granted the holders of the child's educational rights.

**Notice of appeal**

On September 27, 2021, mother filed a notice of appeal.

## DISCUSSION

### I. Applicable law and standard of review

Section 388 allows a parent to petition the juvenile court "upon grounds of change of circumstance or new evidence . . . to change, modify, or set aside any order of court previously made . . . ." (§ 388, subd. (a)(1).) The parent has the burden to prove both (1) a change of circumstance or new evidence that warrants the proposed modification of a prior order and (2) that the proposed modification is in the best interests of the child. (§ 388, subd. (a); *In re Jasmon O.* (1994) 8 Cal.4th 398, 415.)

10

Section 388 "'provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new information.'" (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 (*Mickel O.*).)

The petitioner must show changed, not changing, circumstances. (*Mickel O., supra*, 197 Cal.App.4th at p. 615.) "The change of circumstances or new evidence 'must be of such significant nature that it requires a setting aside or modification of the challenged prior order.'" (*Ibid.*) Even if a petitioner shows a genuine change of circumstance, the petitioner must also "'show that the undoing of the prior order would be in the best interests of the child.'" (*Ibid.*) "[A]fter reunification services have terminated, a parent's petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

The standard of review for a juvenile court's order denying a section 388 petition is abuse of discretion. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1158.) The juvenile court's determination "should not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) Under this standard, "'"a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'"'" (*Ibid.*)

## II. Mother's section 388 petition

Mother argues that the juvenile court abused its discretion in denying her last section 388 petition. Mother argues that she established a change of circumstance because she completed a substance abuse program, maintained sobriety, and had been

11

successfully caring for N.S.'s sibling for eight months.  Mother argues that it was in the best interests of N.S. to grant the section 388 petition because N.S. said he loved and missed them both.  We review mother's arguments below, and conclude that the juvenile court did not abuse its discretion in denying mother's petition.

### A.    *Changed circumstances*

The juvenile court addressed mother's substance abuse, noting its familiarity with the family since 2017 until December 2020.  Mother had chosen to use and abuse drugs.  Mother lost one child and had not had N.S. in her custody since his birth two years earlier.  Despite this evidence, mother argues that she sufficiently addressed the substance abuse concerns.  Mother completed an inpatient substance abuse treatment program, was participating in an outpatient program, completed classes including parenting, anger management and nurturing, tested negative for drugs, and most significantly, had safely cared for N.S.'s younger sibling for eight months.  Mother was seeking time to reunify with N.S.

Mother argues that the juvenile court did not address the changed circumstances element of section 388, thus "the only conclusion to be drawn from its silence on the issue is that Mother satisfied her burden of proof."  On the contrary, we find that the trial court did address this element, noting that mother had a long history of substance abuse and only recently started taking her sobriety seriously.  The court noted mother's drug abuse had prevented mother from having N.S. in her care and custody for the first two years of his life.  Even if the court had not addressed this first element of the section 388 test, we must

12

resolve any ambiguities in favor of affirmance. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.)

The trial court did not abuse its discretion in determining that mother's recent efforts in achieving sobriety were insufficient to show truly changed circumstances. Mother had been abusing drugs since the age of 17. Her parental rights to her oldest child were terminated after she failed to address her substance abuse and mental health issues. Mother had multiple relapses despite completing drug programs in the past. Mother and N.S. tested positive for amphetamines at the time of the child's birth, and mother admitted to frequent drug use over the course of the prior eight years. In May 2019, mother was discharged from her rehabilitation facility after testing positive for methamphetamine and attempting to bring drugs into the facility. In April 2020, mother was arrested for purchase and possession of narcotics. In November 2020, mother tested positive for methamphetamines during a prenatal visit. It was not until December 2020, approximately 10 months prior to the hearing on mother's section 388 petition, that mother enrolled in a substance abuse program. Under the circumstances, it was well within the juvenile court's discretion to determine that mother had not demonstrated sufficiently changed circumstances or that she could remain drug-free to provide N.S. with a stable living environment.

Juvenile courts have recognized that chronic drug use is not easily resolved. In *In re Amber M.* (2002) 103 Cal.App.4th 681, 686, for example, a mother had completed residential drug treatment and had been clean for 372 days. The mother was on step 3 of her 12-step program. Under those circumstances, the mother was considered "in the early stages of recovery." (*Ibid.*)

13

Although the mother in *Amber M.* had completed her domestic violence and sexual abuse treatment, the juvenile court did not abuse its discretion in determining that the mother was merely "progressing in treatment." (*Id.* at p. 687.)

Mother in this matter had even less time abstaining from drug use. Given her long history of substance abuse, the juvenile court did not err in determining that mother showed changing, but not changed, circumstances. (See *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424 [noting the father's "200 days [of sobriety] was not enough to reassure the juvenile court that the most recent relapse would be his last"].)

The juvenile court's determination that mother had not shown sufficiently changed circumstances to warrant granting of her section 388 petitions was not an abuse of the court's discretion.

## B. *Best interests of the child*

The juvenile court emphasized that mother's requested change of order would not be in N.S.'s best interests. Two-year-old N.S. had been removed from mother and placed in the home of his caregivers and half sibling when he was two days old. N.S. thrived in the home and bonded with his caregivers and his half sibling over the course of the next two and a half years. The caretakers were the only parents he had ever known. In contrast, mother had failed to visit the child during the first months of his life, and visited sporadically and infrequently. During a break in visitation, mother went for more than a year and a half without having any contact with the child. During her visits, mother appeared unable to care for the child and became frustrated with him. N.S. did not recognize mother as his mother and at times expressed that he did not want to visit with mother. During a

14

recent visit, N.S. asked his caretakers if he could go home on three separate occasions.

In discussing the best interest element, the court stated that N.S. lived with the caretakers since birth and it would not be in the child's best interests to provide mother with reunification services for a chance to reunify at some unknown date in the future. The court was correct to focus on N.S.'s need for permanency at this stage of the proceedings. The presumption that arises after termination of reunification services is "that continued care is in the best interest of the child." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) The presumption is a rebuttable one, but it requires "more than a last-minute oral attempt by a parent to delay permanency for a child who has already spent as much as 22 months in out-of-home placement." (*Ibid.*) On the eve of a section 366.26 hearing, a child's interest in stability is the court's foremost concern and generally outweighs any interest in reunification. (*In re J.C.* (2014) 226 Cal.App.4th 503, 526-527 [recognizing that the juvenile court's assessment of § 388 petitions filed after reunification efforts end must recognize the law's shift towards promoting the child's need for permanency and stability at later stages of dependency proceedings].) Here, N.S. had been in a stable and loving home with the caregivers and his half sibling for more than two years. He did not recognize mother as his mother, and knew her as merely a friendly acquaintance. Under the circumstances, the juvenile court did not abuse its discretion in determining that N.S.'s need to maintain stability outweighed any benefit he might gain from reunification services with mother.

A court acts within its discretion when it determines that "after a child has spent a substantial period in foster care and

attempts at reunification have proved fruitless, the child's interest in stability outweighs the parent's interest in asserting the right to the custody and companionship of the child." (*Jasmon O., supra*, 8 Cal.4th at pp. 419-420.)  In this case, the record supported the juvenile court's decision that permanency was of the utmost importance for N.S.  The court did not abuse its discretion in so holding.

## III.  Termination of parental rights

Mother's sole argument as to termination of her parental rights is that the juvenile court erred in terminating her parental rights because her section 388 petition should have been granted.

Mother relies on *In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1509, in which the reviewing court found that the juvenile court erred in failing to grant mother's modification petition requesting visitation and therefore reversed an order terminating parental rights.  *Hunter S.* is distinguishable.  There, the mother was denied virtually all court-ordered visitation for approximately 30 months due to the minor's refusal to visit.  (*Id.* at pp. 1500-1505.)  Under those circumstances, the juvenile court essentially abdicated its responsibility regarding visitation for the child.  The reviewing court reversed so that the juvenile court could rectify "three years of error and judicial inattention" with respect to visitation.  (*Id.* at pp. 1507-1508.)  Here, in contrast, mother's failure to visit was not the fault of the court.  Mother admits that she was inconsistent with visitation for the first year of the dependency but argues that, thereafter, her visitation was impacted by COVID-19.  The record does not establish that mother was prevented from visiting with N.S. due to the impact of COVID-19.  Instead, the record reveals that mother's failure to create a bond with N.S. during the early stage of his life was due

16

to her failure to address her substance abuse issues and her inconsistent visitation.

We have determined that the juvenile court did not abuse its discretion in denying mother's section 388 petition.  Therefore, we affirm the order terminating mother's parental rights.

## DISPOSITION

The orders are affirmed.

_____
CHAVEZ, J.

We concur:

_____
LUI, P. J.

_____
ASHMANN-GERST, J.

17